Scileppi, J.
In January, 1968 plaintiff, a real estate developer, took title to some 70 or more acres in the northeastern part of the. Town of Southeast for a purchase price of $84,000. At that time, the zoning ordinance classified the district R-2, and sanctioned the construction of residences on plots containing 40,000 square feet of land, provided that each be “ of such a shape that a square with 150 feet on each side will fit on the lot and shall have a frontage of 150 feet or more on a street ’ ’. Pursuant to these requirements, plaintiff prepared a subdivision map dividing the property into 44 separate building lots, and applied to the Planning Board of the Town of Southeast for approval. The board rejected the initial application and the plaintiff, conform *223 ing the subdivision application to stated board requirements, renewed the application. The board deferred action upon the second application on the ground that the town board was presently considering an amendment of the zoning ordinance which would affect the area in which the plaintiff’s land was situated. During the pendency of the application, the town adopted the proposed amendment which provided that each parcel be upzoned to an R-l classification which would require that‘ ‘ each lot shall have a minimum area of 60,000 square feet and shall have a frontage of 175 feet or more on a street, each lot shall be of such a shape that a square of 200 feet on each side will fit on the lot, and some portion of such square shall be within 50 feet of a street line ’ ’.
Subsequently, on May 13, 1968, the effective date of the new ordinance, the plaintiff moved that the preliminary application be reconsidered and approved on the basis of the former zoning regulation. Preliminary approval was denied for failure to conform to the minimum requirements of the amended ordinance. Plaintiff thereupon commissioned its licensed surveyor to prepare a second subdivision application conforming to the new requirements which reduced the number of available lots to 31. That application was never submitted; instead, plaintiff, alleging that the ordinance was confiscatory, and bore no reasonable relation to the public welfare, commenced this action seeking to declare the zoning ordinance unconstitutional.
In support of the alleged confiscation, plaintiff introduced expert testimony, including that of real estate brokers and a builder, that under one-acre zoning the cost of land would be approximately $8,700 per lot, while under the 1%-acre zoning it would approximate some $12,354 per lot — an increase of some $3,650 per lot; that in order to render construction on a lot costing in excess of $12,000, economically feasible homes would run in excess of $48,000; that the average price of subdivision homes in the area was approximately $30,000, and, finally, that the highest selling price of such homes would be about $40,000, more than $8,000 less than was economically feasible. The town, producing no contrary proof, introduced expert testimony to the effect that the topography and soil conditions were such as to inhibit the installation of central sewer and water systems, so that any present residential development would necessarily be *224 limited to the use of wells and septic tanks; and that, in turn, largely because of the area’s topography, its location within or contiguous to the New York City watershed, and drainage difficulties, the area would best be zoned for residences on two-acre plots in order to provide ample space for drainage and thus minimize the danger of water pollution. Additional testimony was adduced which established that the rezoning was initiated as part of a well-co-ordinated and comprehensive land use scheme for the Town of Southeast generally, which was designed to reflect local land conditions and local development policies with respect to such factors as population growth, economic activity, the availability of transportation and communications facilities, as well as public utilities generally, profile and tax base.
On the basis of the evidence adduced, the trial court found that the ordinance had rendered plaintiff’s property, under existing conditions, unmarketable; had inflicted “ significant economic injury” by increasing its per lot cost by $3,650; and, in the absence of any showing of countervailing considerations on the part of the municipality, was unconstitutional as applied to plaintiff’s property. On appeal, the Appellate Division affirmed, without opinion, Justice Benjamin dissenting.
We have long recognized that “ [w] ithout zoning restrictions, the self-interest of the individual property owners will almost inevitably dictate the form of the development [within a particular] district ” (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 228); and we have defined the police power to include all reasonable restrictions upon the use of property in the hope of promoting urban and rural development according to plans calculated to advance the public welfare generally (Matter of Wulfsohn v. Burden, 241 N. Y. 288; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 229, supra; see, also, Hesse v. Rath, 249 N. Y. 436, 438; Stevens v. Town of Huntington, 20 N Y 2d 352, 359 [dissenting opn., Bergan, J.]). Neverehtless, though long-range planning for zoning purposes may be a valid exercise of the police power, that power, broad though it may be (Matter of Engelsher v. Jacobs, 5 N Y 2d 370, 373, cert. den. 360 U. S. 902), is not plenary and must, characteristically, reasonably relate to the promotion of the health, comfort, safety and general welfare of the community (Matter of Overhill Bldg. Co. v *225 Delany, 28 N Y 2d 449; Nettleton Co. v. Diamond, 27 N Y 2d 182; Contino v. Incorporated Vil. of Hempstead, 27 N Y 2d 701, revg. 33 A D 2d 1043 on the dissenting opn. at the Appellate Division; Stevens v. Town of Huntington, 20 N Y 2d 352, supra; Barrett v. State of New York, 220 N. Y. 423): “' The ordinance * * * must find [its] justification in some aspect of the police power, asserted for the public welfare ’ ” (Dowsey v. Village of Kensington, 257 N. Y. 221, 228; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 498-499; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 228, supra). Undoubtedly, every restriction„upon the unencumbered use of property, quite apart from its professed purposes, will have an adverse effect upon its market value. That hardship is inevitably the product of police regulation and the pecuniary rights of the individual, of necessity, must be subordinate to those of common weal. Yet, no matter how pressing a problem may be, private property may not be so interfered with as to amount to a taking without compensation, even for a public purpose or to advance the general welfare; " and this is so whenever the zoning ordinance precludes the use of the property for any purpose to which it is reasonably adapted” (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493, 499, supra; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 230, 231, supra; Dowsey v. Village of Kensington, 257 N. Y. 221, 229-230, supra; see, also, Summers v. City of Glen Cove, 17 N Y 2d 307, 309). That the ordinance be ‘ ‘ reasonably related ’ therefore, requires not only that the regulation itself relate to the purpose to be effected, but that it does so in a manner so as not to deprive the individual property owner “ of all beneficial use of his property ” (Matter of Eaton v. Sweeney, 257 N. Y. 176, 182-183; see, also, Shepard v. Village of Skaneateles, 300 N. Y. 115), and also that it does so without imposing upon him a “ special hardship unnecessarily and unreasonably ” (Dowsey v. Village of Kensington, 257 N. Y. 221, 226, supra).
We have, during the past decade, sought further to assure that not even the public need for long-term and uniform planning be achieved, in the words of Mr. Justice Holmes, “by a shorter cut than the constitutional way of paying for the change ” (Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416). Thus, in Mat *226 ter of Fulling v. Palumbo (21 N Y 2d 30, 33) this court adopted the rule that ‘ ‘ where the property owner will suffer significant economic injury by the application of an area standard ordinance, that standard can be justified only by a [an affirmative] showing [on the part of the municipality] that the public health, safety and welfare will be served by upholding the application of the standard ’ Once it is demonstrated that the restriction serves some legitimate public purpose, the property owner, in order to sustain the attack on constitutional grounds, must further establish that the resulting hardship is such as to deprive him of any use of the property to which it is reasonably adapted, or serves to destroy the greater part of its value (Matter of Fulling v. Palumbo, 21 N Y 2d 30, 35, supra; see, also, Stevens v. Town of Huntington, 20 N Y 2d 352, supra; Summers v. City of Glen Cove, 17 N Y 2d 307, supra; Vernon Parle Realty v. City of Mount Vernon, 307 N. Y. 493, supra; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, supra; Dowsey v. Village of Kensington, 257 N. Y. 221, supra). The question, in this latter regard, is essentially one of degree and where the ordinance goes so far as to preclude the use of the property for any purpose to which it is reasonably adapted, it is confiscatory and must be held unconstitutional. As in all cases of this kind, though the principles are elementary and comparatively few, it is in their application that we experience difficulty.
Zoning regulations, as an exercise of the police power, are subject to the fundamental rule regarding the exercise of that power: that there is some evil extant or reasonably to be apprehended which the police power may be invoked to prevent and that the remedy proposed must be generally adapted to that purpose. (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 298, supra; see, also, Nettleton Co. v. Diamond, 27 N Y 2d 182, supra). Whether designed to promote public health, safety or welfare, the validity of the regulation must, therefore, depend upon not only the character of the regulation but the circumstances attending its enactment. Changing conditions generate new problems which, in turn, may make necessary, even beneficial, newer forms of public regulation. The need, indeed the desirability, for regulation broadens into new regions and though the validity of police regulations is not to be rested simply upon popular whim, *227 it must be responsive to “ ‘ what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare ’ ’ ’ (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 299, supra, quoting Noble State Bank v. Haskell, 219 U. S. 104, 111).
Guided by these general principles in the case before us, it is certain that the prospect of water pollution from the inadequate spacing of septic tanks in such rocky and hilly terrain provided more than adequate reason for the upzoning. The testimony introduced was uncontradicted by the landowner and established that the threat of pollution to both local wells and the entire water basin was real and required affirmative steps in the form of pollution control. Obviously, measures in the form of water pollution control are ‘ ‘' held by the * * * preponderant opinion to be greatly and immediately necessary to the public welfare ’ ” (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 299, supra), do relate to some subsisting evil which should be controlled, and, therefore, serve some legitimate public purpose. The only remaining question is whether the measure tends to remedy the evil perceived, i.e., does it reasonably serve to vindicate the policy sought to be effected. Here, the requirement of larger parcels was designed in the hope of reducing the number of septic tanks and thus allowing for sufficient land area to prevent the effluent from the septic tanks from seeping into the water source of the home owner or draining into the reservoir serving the New York City area, and would indeed tend to minimize the danger of pollution.
So too, despite the absence of proof by the town on the issue, plaintiff has failed to demonstrate that the ordinance was tantamount to a confiscation. Briefly, the theory of the action was that the plaintiff could build and sell houses on one-acre parcels (the former zoning) without sustaining a loss, but could not do so without suffering a loss under the increased requirements. The evidence, though uncontroverted, does not support that conclusion. In essence the plaintiff’s only showing .disclosed that the rezoning had increased the per unit price of each building plot from $8,704, under the former zoning to $12,354 under the 1%-acre zoning; that subdivision houses in that area sell on the average for $30,000, with none going for more than $40,000, *228 and that by prorating the initial purchase price over the reduced number of parcels, a house constructed on a 1%-acre plot would cost the builder at least $48,000, some $8,000 above the maximum going price for subdivision homes in the same area. As Judge Benjamin noted in his dissent, there was no showing that the subdivision houses used as comparables were situated on plots of equal size or that the market was, in fact, tested for plots that size. Indeed, and even more importantly, the plaintiff offered no explanation as to how it could afford to build and sell lots on one-acre p lots, “ when, according to its experts, it would suffer at least an $8,000 loss on each house that it built on a 1%-acre plot costing only $3,650 more than a one-acre plot ” (35 AD 2d 984, 986 [dissenting opn., Benjamin, J.]). In either event, on the basis of its own experts, plaintiff would incur a loss, and the extent of the loss (some $3,650 under the increased requirements) relates more to plaintiff’s qualifications as an entrepreneur than the question of confiscation. Even were it to be believed, while it demonstrates some financial loss, it falls far short of that hardship which deprives it ‘ ‘‘ of any use of the property to which it is reasonably adapted’”, the showing required before the ordinance can be struck down (Matter of Overhill Bldg. Co. v. Belany, 28 N Y 2d 449, 454, supra; Contino v. Incorporated Vil. of Hempstead, 27 N Y 2d 701, revg. on dissenting opn. at App. Div. 33 A D 2d 1043,1044, supra; Shepard v. Village of Skaneateles, 300 N. Y. 115, supra).
Accordingly, the order appealed from should be reversed, without costs, and the case remitted to Special Term for entry of a judgment declaring the zoning ordinance adopted by the Board of Trustees of the Town of Southeast on April 29,1968, constitutional as applied to plaintiff’s property.
Chief Judge Fuld and Judges Burke, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, without costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein.