OPINION OF THE COURT
 

 Jasen, J.
 

 At issue on this appeal is whether the State, having enacted legislation regulating advertising signs and structures in the Catskill and Adirondack Parks, may, after the expiration of a six and one-half year amortization period, require the removal of nonconforming signs without compensation.
 

 ECL 9-0305 (subd 1) provides that to ensure the natural beauty of the Catskill and Adirondack Parks, advertising signs and structures, for which a permit is not obtained, are prohibited except accessory signs and signs located within the Catskill Park limits of an incorporated village. Any signs erected within the Catskill Park as of May 26, 1969, which are not in conformance with the regulations promulgated to implement ECL 9-0305 (see 6 NYCRR Part 195), were required to be removed by January 1, 1976. (ECL 9-0305, subd 1.)
 

 Plaintiff owns approximately 96 outdoor advertising signs or billboards situated within the Catskill Park. Admittedly, none of these signs conforms to the regulations promulgated pursuant to ECL 9-0305. Seeking therefore to enjoin the removal of its signs, plaintiff, only two weeks before the expiration of the amortization period, commenced the present action to declare ECL 9-0305 unconstitutional on the ground that it constitutes a taking for which compensation must be provided.
 

 Special Term denied plaintiff’s motion for a preliminary injunction and granted summary judgment for the defendant, declaring ECL 9-0305 to be constitutional. The Appellate Division unanimously affirmed.
 

 Having reaffirmed today our prior decisions holding aesthetics to be a valid basis for the exercise of the police power (see
 
 Suffolk Outdoor Adv. Co. v Hulse,
 
 43 NY2d 483 [decided herewith]), we proceed to a consideration of plaintiff’s contention that ECL 9-0305 constitutes a taking requiring that monetary compensation be given to owners of nonconforming signs removed from the Catskill Park.
 

 The power which the State may exercise over private property spans a wide spectrum. The State may choose merely to
 
 *474
 
 regulate the use of land pursuant to the police power or to "take” or physically acquire property pursuant to the power of eminent domain.
 
 (French Investing Co. v City of New York,
 
 39 NY2d 587, 593, app dsmd 429 US 990; see, generally, Sax, Takings and the Police Power, 74 Yale LJ 36.) The mode of control chosen to effectuate the desired governmental end has all too often been termed critical to a determination of the necessity of providing compensation to property owners adversely affected. Unfortunately, characterization of the State’s exercise of control over private property as either a noncompensable regulation or a compensable taking is often fraught with difficulty. As Professor Costonis has aptly commented: "Like the bedeviled horseman, government stands shakily astride the police and eminent domain powers as it seeks to give direction in land use affairs.” (Costonis, "Fair” Compensation and the Accommodation Power: Antidotes For the Taking Impasse in Land Controversies, 75 Col L Rev 1021.)
 

 Perhaps the difficulty in precisely delineating the boundary between the police and eminent domain powers stems from the realization that, as a practical matter, any restriction upon the use of property is a deprivation and has a substantially adverse impact upon market value and, in that sense, has been loosely described as a "taking”. (See
 
 Salamar Bldrs. Corp. v Tuttle,
 
 29 NY2d 221, 225.) On the other hand, it is equally true "[t]hat hardship is inevitably the product of police regulation and the pecuniary rights of the individual, of necessity, must be subordinate to those of common weal.”
 
 (Salamar Bldrs. Corp. v Tuttle,
 
 29 NY2d, at p 225,
 
 supra.)
 
 In the final analysis, characterization of government control over private property turns usually on a difference of degree and only occasionally on a difference in kind.
 

 In exercising the police power to provide for the general welfare of the people, the State may reasonably regulate the use of private property, notwithstanding the curtailment of private property rights.
 
 (People ex rel. Durham Realty Corp. v La Fetra,
 
 230 NY 429, 442;
 
 New York State Thruway Auth. v Ashley Motor Ct.,
 
 10 NY2d 151, 157.) The requirement that an exercise of the police power be reasonable mandates not only that the regulation relate to the purpose for which it was enacted, but also that it does not unreasonably deprive an owner of all beneficial use of his property.
 
 (Salamar Bldrs. Corp. v Tuttle,
 
 29 NY2d, at p 225,
 
 supra.)
 
 An exercise of the police power unreasonably frustrates an owner’s use of his
 
 *475
 
 property "if it renders the property unsuitable for any reasonable income productive or other private use for which it is adapted and thus destroys its economic value, or all but a bare residue of its value (see, e.g.,
 
 Lutheran Church in Amer. v City of New York,
 
 35 NY2d 121, 130,
 
 supra; Vernon Park Realty v City of Mount Vernon,
 
 307 NY 493, 499,
 
 supra; Shepard v Village of Skaneateles,
 
 300 NY 115, 118;
 
 Arverne Bay Constr. Co. v Thatcher,
 
 278 NY 222, 226, 232,
 
 supra; Matter of Eaton v Sweeny,
 
 257 NY 176, 183; 1 Rathkopf,
 
 op. cit.,
 
 § 6.02, at p 6-2).”
 
 (French Investing Co. v City of New York,
 
 39 NY2d, at p 596,
 
 supra.)
 
 To so frustrate an owner’s use of his property under the guise of the police power is, in reality, nothing more than a deprivation of proeprty without due process of law. (NY Const, art I, § 6; US Const, 14th Arndt, § 1;
 
 French Investing Co. v City of New York,
 
 39 NY2d, at p 595,
 
 supra; Vernon Park Realty v City of Mount Vernon,
 
 307 NY 493, 499; 1 Rathkopf, Law of Zoning and Planning [4th ed], §4.02.)
 

 Turning to an analysis of the statute involved in the present case, we believe it helpful to view, at the outset, the effect of this statute from the perspective of an owner of land upon which a billboard has been erected. Formulated in this setting, the critical inquiry becomes whether ECL 9-0305 renders an owner’s property unsuitable for any use for which it is adapted, thereby destroying its economic value.
 

 Viewed from this perspective, the restrictions placed upon the use of property by ECL 9-0305 do not rise to the level of a "taking” or confiscation without due process of law. In reaching this conclusion, we borrow from the analysis employed in two recent cases,
 
 French Investing Co. v City of New York (supra)
 
 and
 
 Penn Cent. Transp. Co. v City of New York
 
 (42 NY2d 324).
 

 In
 
 French,
 
 which involved an amendment to the New York City Zoning Resolution purporting to create a special park district, we were confronted, as we are again today, with a challenge to regulation of the use of private property. The amendment to the New York City Zoning Resolution rezoned two private parks in the Tudor City residential complex in Manhattan as public parks. By rezoning the property exclusively as public parks, the city precluded any residential or office building development. Finding that the zoning amendment prohibited "all reasonable income productive or other
 
 *476
 
 private use of the property”, we held the amendment violative of due process. (39 NY2d, at pp 590-591,
 
 supra.)
 

 Although the zoning amendment in
 
 French
 
 did permit the transfer of development rights from the parks to other areas in Manhattan, they did not attach to specific parcels. Thus, we characterized these rights as "floating development rights, utterly unusable until they could be attached to some accommodating real property, available by happenstance of prior ownership, or by grant, purchase, or devise, and subject to contingent approvals of administrative agencies.” (39 NY2d, at pp 597-598,
 
 supra.)
 
 Because of the uncertainty of future realization of these rights, we rejected the contention that the amendment did not deprive the property owner of all rights in his property.
 

 Analogous to
 
 French
 
 is our more recent decision in
 
 Penn Cent. Transp. Co. v City of New York
 
 (42 NY2d 324,
 
 supra),
 
 involving a provision of the Administrative Code of the City of New York, which, as applied to Grand Central Terminal, prohibited the erection of an office tower over the existing structure. Characterizing landmark regulation as unlike either zoning or eminent domain, we held that such regulation does not violate due process as long as the landowner is allowed a reasonable return on his property. (42 NY2d, at pp 330-331,
 
 supra.)
 

 In contrast to the zoning amendment at issue in
 
 French,
 
 the landmark regulation in
 
 Penn Cent,
 
 did not deprive the property owner of the ability to use the regulated land in a manner which would ensure a reasonable return on its investment. Also unlike the amendment in
 
 French,
 
 the regulation in
 
 Penn Cent,
 
 provided for the transfer of development rights to other parcels in the area, a number of which were already owned by Penn Central. Consequently, the uncertainty of future economic realization which plagued the
 
 French
 
 amendment was absent in
 
 Penn Cent.
 

 Although the regulation of billboards presents a somewhat different problem than those previously encountered in
 
 French
 
 and
 
 Penn Cent.,
 
 the analytical framework developed in those cases is useful in resolving whether a landowner who has erected billboards on his property is deprived of the use of his property by a regulation prohibiting the maintenance of such billboards. Drawing upon this analysis, we are of the opinion that, regardless of whether a legislative pronouncement is denominated a zoning ordinance, a landmark regula
 
 *477
 
 tion, or more broadly, as an exercise of the police power, the critical test of its constitutionality remains whether the challenged legislation deprives a property owner of all reasonable use of his property. To be distinguished, however, are instances of the exercise of the governmental power of eminent domain in which there is a true "taking” of the property.
 

 Applying this test in the present case, we conclude that the regulation of billboards does not deprive a property owner of all reasonable use of his property. ECL 9-0305 does not, as did the zoning amendment in
 
 French,
 
 place upon the property owner an affirmative requirement—a burden that the land be utilized exclusively as a park open to the public. Instead, this regulation merely places upon the landowner, and therefore upon his lessee, a particular negative restriction—that billboards alone may not be maintained upon specified property. On this analysis, it cannot be said that the prohibition of billboards deprives landowners or their lessees of all reasonable use of their property.
 

 Thus, the logical corollary to this conclusion is that lessees of property upon which the maintenance of billboards has been prohibited have not been unreasonably deprived of property in violation of due process of law. Certainly a lessee cannot be said to possess a property interest greater than that of the fee owner. By merely entering into a lease specifically for the purpose of erecting a billboard, a lessee is not immunized from regulation of billboards under the police power. A lessee stands in no better position than that of the property owner. If the property owner is not deprived of all reasonable use of his property by an exercise of the police power, then neither may the lessee claim that he was. For this reason, we cannot agree with plaintiffs contention that ECL 9-0305 unreasonably deprives it of property without due process of law.
 

 Although we do not believe that plaintiff is entitled to monetary compensation for the removal of nonconforming billboards, we are of the opinion that a regulation requiring the immediate removal of billboards without compensation in some instances might be an unconstitutional deprivation of property. In reaching this conclusion, we are not unmindful of our previous decisions in which we have held that outdoor signs and billboards located along the New York State Thruway may be prohibited and removed without compensation. (See
 
 New York State Thruway Auth. v Ashley Motor Ct.,
 
 10 NY2d 151,
 
 supra; Whitmier & Ferris Co. v State of New York,
 
 
 *478
 
 20 NY2d 413.) These decisions were premised, however, upon concern for the safety of motorists traveling along the Thruway.
 

 While it is true that aesthetics, in itself, constitutes a valid basis for the exercise of the police power just as safety does
 
 (Suffolk Outdoor Adv. Co. v Hulse,
 
 43 NY2d 483 [decided herewith];
 
 Matter of Cromwell v Ferrier,
 
 19 NY2d 263;
 
 People v Goodman,
 
 31 NY2d 262;
 
 Rochester Poster Adv. Co. v Town of Brighton,
 
 49 AD2d 272; 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 7.07, 11.54; 67 NY Jur, Zoning and Planning Laws, § 123), the public benefit gained from the immediate implementation of a regulation enacted pursuant to the police power to effectuate these objectives may not necessarily be of equal significance. Certainly, a billboard which serves as a menace to the safety of motorists should be removed without delay. In such a case, the public benefit gained by immediate implementation of an exercise of the police power far outweighs the concomitant financial injury suffered by the affected billboard and property owners.
 

 In contrast to a safety-motivated exercise of the police power, a regulation enacted to enhance the aesthetics of a community generally does not provide a compelling reason for immediate implementation with respect to existing structures or uses. True, the public will benefit from a more aesthetically beautiful community, but absent the urgency present in a safety-motivated regulation, the immediate benefit gained does not outweigh the loss suffered by those individuals adversely affected. As always, an exercise of the police power must be reasonable.
 
 (French Investing Co. v City of New York,
 
 39 NY2d, at p 595,
 
 supra; Salamar Bldrs. Corp. v Tuttle,
 
 29 NY2d, at p 225,
 
 supra; 1
 
 Rathkopf, Law of Zoning and Planning [4th ed], § 4.02.) While we do not believe that compensation is required, we do believe that it would have been unreasonable to require, solely for aesthetic purposes, the immediate removal of the billboards prohibited in the present case.
 

 Fortunately, rather than adopting a regulation requiring the immediate removal of nonconforming billboards without compensation, the Legislature has chosen to provide an amortization period as a means of ameliorating the burden cast upon affected billboard owners. The concept of amortization evolved as a hoped for solution to the tension between the ideal of comprehensive zoning and contemporary notions of
 
 *479
 
 due process. At the outset, even zoning laws prospective in operation only were looked at with a jaundiced eye. Understandably, attempts to apply a zoning ordinance retroactively faced far greater resistance. (See Comment, The Abatement of Pre-existing Nonconforming Uses under Zoning Laws: Amortization, 57 NW L Rev 323.) Consequently, zoning ordinances were enacted to control only new land uses. As for existing nonconforming uses, it was hoped that they would gradually disappear. However, as Professor Anderson has observed: "It became axiomatic that old uses never die.” (Anderson, Amortization of Nonconforming Uses—A Preliminary Appraisal of Harbison v City of Buffalo, 10 Syracuse L Rev 44; see Comment, The Abatement of Pre-existing Nonconforming Uses Under Zoning Laws: Amortization, 57 NW L Rev 323.)
 

 As a middle ground between prospectively and retroactively applied zoning laws, the concept of amortization emerged. By limiting the period during which an existing nonconforming use may be continued, a balance is struck between an individual’s interest in maintaining the present use of his property and the general welfare of the community sought to be advanced by the zoning ordinance. Thus, by permitting a limited period during which an existing nonconforming use may be continued, rather than requiring its termination immediately, amortization provides an owner with an opportunity to recoup his investment and avoid substantial financial loss. (See, generally, ALI Model Land Development Code, art 4, Discontinuance of Existing Land Uses [1975], 142, 146; 1 Anderson, New York Zoning Law and Practice [2d ed], § 6.47; Nonconforming Uses—Amortization, Ann., 22 ALR3d 1134; Anderson, Amortization of Nonconforming Uses—A Preliminary Appraisal of Harbison v City of Buffalo, 10 Syracuse L Rev 44; Holme, Billboards and On-Premises Signs: Regulation and Elimination Under the Fifth Amendment, 1974 Institute on Planning, Zoning, and Eminent Domain 247; Comment, The Abatement of Pre-existing Nonconforming Uses Under Zoning Laws: Amortization 57 NW L Rev 323.)
 

 In
 
 Matter of Harbison v City of Buffalo
 
 (4 NY2d 553), involving an ordinance requiring the termination of a cooperage business within a period of three years, we sustained the constitutionality of the concept of amortization. As long as the amortization period is reasonable, it should be upheld. (See Nonconforming Uses—Amortization, Ann., 22 ALR3d 1134; 82 Am Jur 2d, Zoning and Planning, § 188.) Whether an amorti
 
 *480
 
 zation period is reasonable is a question which must be answered in light of the facts of each particular case. (See Nonconforming Uses—Amortization, Ann., 22 ALR3d 1134.) Certainly, a critical factor to be considered is the length of the amortization period in relation to the investment. (See
 
 City of Los Angeles v Gage,
 
 127 Cal App 2d 442;
 
 National Adv. Co. v County of Monterey,
 
 1 Cal 3d 875, cert den 398 US 946.) Naturally, as the financial investment increases in dimension, the length of the amortization period should correspondingly increase. Similarly, another factor considered significant by some courts is the nature of the nonconforming activity prohibited. Generally a shorter amortization period may be provided for a nonconforming use as opposed to a nonconforming structure. (See, e.g.,
 
 Village of Gurnee v Miller,
 
 69 111 App 2d 248.)
 

 In essence, however, we believe the critical question which must be asked is whether the public gain achieved by the exercise of the police power outweighs the private loss suffered by owners of nonconforming uses. (See, e.g.,
 
 Grant v Mayor & City Council of Baltimore,
 
 212 Md 301.) While an owner need not be given that period of time necessary to permit him to recoup his investment entirely (see Comment, The Abatement of Pre-existing Nonconforming Uses Under Zoning Laws: Amortization, 57 NW L Rev 323, 332), the amortization period should not be so short as to result in a substantial loss of his investment. (See
 
 Matter of Harbison v City of Buffalo,
 
 4 NY2d 553, 563,
 
 supra; People v Miller,
 
 304 NY 105, 109.) If an owner can show that the loss he suffers as a result of the removal of a nonconforming use at the expiration of an amortization period is so substantial that it outweighs the public benefit gained by the legislation, then the amortization period must be held unreasonable.
 

 In determining what constitutes a substantial loss, a court presented with a challenge to a prohibition of billboards similar to the statute in this case should look to, for example, such factors as: initial capital investment, investment realization to date, life expectancy of the investment, the existence or nonexistence of a lease obligation, as well as a contingency clause permitting termination of the lease. As a general rule, most regulations requiring the removal of nonconforming billboards and providing a reasonable amortization period should pass constitutional muster. In concluding as we do, we note that courts in a number of other jurisdictions have
 
 *481
 
 passed favorably upon legislative pronouncements requiring removal of nonconforming billboards within amortization periods of varying lengths. (See, e.g.,
 
 Murphy Inc. v Board of Zoning Appeals,
 
 147 Conn 358 [2 years];
 
 National Adv. Co. v County of Monterey,
 
 1 Cal 3d 875, cert den 398 US 946,
 
 supra
 
 [1 year];
 
 Western Outdoor Adv. Co. v City of Miami,
 
 256 So 2d 556 [Fla] [5 years];
 
 Art Neon Co. v City & County of Denver,
 
 488 F2d 118, cert den 417 US 932 [2 to 5 years].)
 

 Because of the procedural posture in which this case comes to us, we are unable to determine whether, as applied, the six and one-half year amortization period provided in ECL 9-0305 is unreasonable. It is clear that in granting summary judgment for the defendant, both the trial court and the Appellate Division concluded, as a matter of law, that the Legislature may constitutionally require the removal of billboards pursuant to the police power without compensating those owners adversely affected. As a result, the reasonableness of the amortization period, as a question of fact, was never addressed by either the parties in opposition to or support of the cross motion for summary judgment or by the courts. For this reason, we believe a remand for an immediate hearing is required to provide plaintiff with an opportunity to establish, if it can, that the statutory amortization period of six and one-half years is unreasonable, as applied.
 

 In reaching our conclusion, we reject plaintiff’s contention that section 88 of the Highway Law, enacted pursuant to the Federal Highway Beautification Act of 1965 (US Code, tit 23, § 131) requires that compensation be provided for the removal of billboards located within 660 feet of Federally aided highways. By choosing to provide compensation for billboards removed to beautify Federally aided highways, the Legislature did not relinquish its authority to promote general welfare under the police power without compensating property owners adversely affected by the regulation.
 

 Finally, we similarly reject plaintiff’s contention that ECL 9-0305 is violative of the First Amendment guarantee of free speech. (See
 
 Suffolk Outdoor Adv. Co. v Hulse,
 
 43 NY2d 483 [decided herewith].)
 

 Accordingly, the order of the Appellate Division should be reversed and the case remanded to Supreme Court, Albany County, for further proceedings in accordance with this opinion.
 

 
 *482
 
 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, with costs, and the case remitted to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein. Appeal by "Proposed Intervener” Dale dismissed, with costs, upon the ground that it does not lie.