OPINION OF THE COURT
Gabrielli, J.
Respondent is the owner of a corner lot which measures 100 feet by 47 feet. Since the local zoning ordinances mandate a 50-foot frontage on all streets in the area, he was required to obtain an area variance in order to use this residential property in any reasonable manner. The property was originally part of a larger plot which was purchased in 1970 by a corporation in which respondent has a substantial interest. The corporation divided the plot into three lots, of which respondent’s is one. The other two meet all zoning requirements, and have since been sold to third parties. For the corporation to have divided the property in such a way that all three lots would have met all requirements, it would have been necessary to demolish an existing residence located to one side of what is now the middle lot.
Respondent now seeks to erect a 20-foot-wide residence *108 on his property. Before the Board of Zoning Appeals he emphasized the fact that his property was only three feet short of the required frontage, and that only on one street. He also presented undisputed evidence that there were several other undersized lots upon which residences had been built in the immediate vicinity of his property. Appellant Board of Zoning Appeals denied his request for an area variance on the ground that the proposed structure was "an aesthetic abomination” and that any hardship was self-created by the decision of respondent’s predecessor in title to subdivide the property as it did. Supreme Court sustained the board, but the Appellate Division found this decision to be "arbitrary and an abuse of discretion.” We agree.
 That a landowner’s difficulty is in a sense self-created is certainly a factor to be taken into account in considering an application for an area variance, although it is less significant a consideration in such cases than in those involving use variances (2 Anderson, New York Zoning Law and Practice [2d ed], § 18.43). It is not, moreover, the determinative factor, and we have in the past upheld the authority of a board to grant an area variance in situations involving self-created hardships (Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309). A finding of self-created hardship normally should not in and of itself justify denial of an application for an area variance (see, generally, Matter of National Merritt v Weist, 41 NY2d 438; Matter of Craig v Zoning Bd. of Appeals of City of Yonkers, 41 NY2d 832; 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.43). The basic inquiry at all times is whether strict application of the ordinance in a given case will serve a valid public purpose which outweighs the injury to the property owner (see Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 455-456).
Here, the public purpose purportedly served by denial of the variance was an aesthetic one. The board concluded that "a dwelling having a width of only 20 feet would not be aesthetically desirable, nor could it as a practical matter be a functional dwelling * * * This type of a home with a bowling alley appearance would * * * tend to depreciate the value of the other dwellings in the area and would adversely affect the aesthetic character of the area. In its efforts to obtain the maximum financial return from this venture, the developer has created an aesthetic abomination. It is the opinion of this Board that such a practice should not be condoned”.
*109 Aesthetic considerations do, of course, constitute a valid public purpose sufficient to justify certain regulation over the use of land (Suffolk Outdoor Adv. Co. v Hulse, 43 NY2d 483, 489-490; Modjeska Sign Studios v Berle, 43 NY2d 468, 478; 1 Anderson, New York Zoning Law and Practice [2d ed], § 7.16). But when denial of a variance is sought to be justified on aesthetic grounds, the public interest in regulation is not necessarily as strong as in those cases involving threats to the public safety (see, also, Modjeska Sign Studios v Berle, supra), and care must be “taken lest the State "trespass through aesthetics on the human personality” (People v Stover, 12 NY2d 463, 472 [Van Voorhis, J, dissenting]). In the present case, it should be noted that the alleged "aesthetic abomination” is simply a somewhat narrow house, which concededly is a permitted use in the area. It would appear rather incongruous to deny an area variance on the ground that the use to be made of the property is aesthetically displeasing when the use is in fact a permitted use. Were this corner lot a mere three feet wider, respondent would have an absolute right to build the proposed residence.
As it is, however, we need not reach the reasonableness of that determination. Although aesthetic considerations are indeed a valid concern of land use regulations, in this case the Zoning Board of Appeals was without power to deny an area variance on aesthetic grounds. The criteria to be applied by a zoning board must in the first instance be delineated by local law, for such a body may exercise only that authority properly delegated to it (2 Anderson, New York Zoning Law and Practice [2d ed], § 18.62). In the present case, the record is bare of any indication that appellant is authorized to apply aesthetics as a criterion in considering applications for area variances. Absent specific authorization which provides sufficient guidance to prevent complete arbitrariness, a Zoning Board of Appeals may not deny an area variance for aesthetic reasons alone (see, generally, 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.62; see, also, Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead, 43 NY2d 801, 802). The allegedly applicable village ordinance, section 16-23, does not supply the requisite authority or ingredient for a denial of the variance.
Accordingly, the order appealed from should be affirmed, with costs.
*110 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.