Wayne A. Freeman, Jr., Esq. Village Attorney, Almond
We are in receipt of your letter in which you state that the raising and grazing of livestock in the downtown area of the village for which your firm serves as village attorney has become a nuisance to residents and other people in such area, although it has not yet developed into a health problem. In a telephone conversation with this office concerning your request for an opinion, you stated that your question is whether there are any existing laws that authorize the village to prohibit the raising and grazing of livestock on private property in areas both adjacent to and part of its downtown business district, and, if not, whether the village by local law may prohibit such activity. You indicate that the village zoning law makes no provision for livestock and that there are no village local laws or ordinances prohibiting the keeping of livestock in the village.
The keeping of animals on private property in such manner that they injure the comfort, repose, health or safety of any considerable number of persons may, under certain circumstances, constitute a criminal nuisance (Penal Law, § 240.45; People v Ehrlich, 14 N.Y.S.2d 125 [Mag Ct, Westchester Co, 1939]), or a public nuisance (Town of MountPleasant v Van Tassell, 7 Misc.2d 643 [Sup Ct, Westchester Co, 1957]). If this is the case, your village may proceed by way of criminal prosecution or civil action to enjoin the nuisance, as the case may be. We render no opinion, however, as to whether the existing conditions which you describe constitute either a criminal nuisance or a public nuisance, since that is a factual matter dependent upon the particular circumstances of the case.
Apart from these criminal and civil remedies, we know of no other authority, statutory or otherwise, that specifically provides for the regulation of livestock by a municipality in the manner you suggest. This does not mean, however, that a village is without power to act in relation to that subject. Under the general grant of police power to local governments, a village may adopt a local law not inconsistent with the Constitution or any general law in relation to the government, protection, order, conduct, safety, health and well-being of persons or property therein (NY Const, Art IX, § 2[c][ii][10]; Municipal Home Rule Law, § 10[1][ii][a][12]), as well as the protection and enhancement of its physical and visual environment (Municipal Home Rule Law, § 10[1][ii][a][11]). Village Law, § 4-412(1) implements this grant of police power by authorizing the board of trustees of a village to enact legislation for "* * * the general welfare of [the village's] inhabitants, the protection of their property, the preservation of peace and good order * * *". The general grant of power set forth in Village Law, § 4-412 replaced the specific delegation of power contained in former Village Law, § 89(12), which empowered villages to "regulate and restrain the keeping within thevillage and the running at large of animals" (L 1972, ch 892, § 3; emphasis supplied). The purpose of this change was to expand the powers of a village, not to limit them (Century Federal Savings and LoanAssociation of Long Island v Incorporated Village of Atlantic Beach,86 Misc.2d 863 [Sup Ct, Nassau Co, 1976]). Furthermore, under the general grant of zoning power, the board of trustees of a village by local law may regulate and restrict the use of buildings and land for the purpose of promoting the health, safety, morals, or the general welfare of the community (Village Law, § 7-700).
The municipal police power extends to the regulation and prohibition of the keeping of livestock (Harkey v deWetter, 443 F.2d 828 [5th Cir, 1971]). Under the general police power to protect the public health and welfare or to suppress nuisances, municipal corporations ordinarily can regulate, prohibit or abate the keeping of livestock as, for example, by requiring a permit for the keeping of livestock, excluding livestock from restricted areas, or prohibiting such keeping within certain distances of dwelling houses (see McQuillin, Municipal Corporations, 3d Edition, § 24.291) or in populated areas (Servodidio v Board of Appeals ofTown of Somers, 146 N.Y.S.2d 125 [Sup Ct, Westchester Co, 1955]; People vBenincasa, 63 Misc.2d 648 [Vill Ct, Nassau Co, 1970]; Kraushaar v Zion,et al., 188 Misc. 851 [Sup Ct, Kings Co, 1946]).
The exercise of the police power by a municipality is subject to the constitutional restrictions on denial of due process of law and denial of equal protection of the laws (US Const, Amend XIV; N Y Const, Art I, §§ 6 and 11). In general, regulations enacted under the police power in relation to livestock must be reasonable, substantially related to a legitimate governmental objective and non-discriminatory (Harkey vdeWetter, supra; Kraushaar v Zion, et al., supra). The requirement of reasonableness mandates that the regulation relate to the purpose for which it was enacted (Suffolk Outdoor Advertising Co., Inc. v Hulse,43 N.Y.2d 483 [1977]). A legitimate governmental objective is one which promotes the safety, health and welfare of the public, as well as aesthetic considerations such as the appearance of the community (id.). Such regulations are void if they fail to provide a uniform rule or standard to govern their enforcement (see McQuillin, supra, § 24.292). A local law prohibiting the keeping of livestock in certain areas of your village would be authorized upon a finding by the board of trustees, based upon an analysis of local conditions, that the prohibition promotes a legitimate governmental objective.
We wish to point out that regulatory laws enacted under the police power are presumed to be constitutional. This means that one who alleges unconstitutionality has the burden of proving that the law is arbitrary, capricious, or unreasonable (Cook v City of Binghamton, 48 N.Y.2d 323
[1979]).
You also state that the village might amend its zoning law to prohibit the keeping of livestock in downtown areas, but suggest that this amendment could not be applied retroactively to prohibit those animals presently found in the village. While we take no position as to whether the owners of the property upon which the livestock are being kept have any vested right to continue to use their land in that manner, we note the general rule that a zoning law may not operate retroactively to prohibit the continuance of an existing, vested nonconforming use of land (Syracuse Aggregate v Weise, 51 N.Y.2d 278 [1980]). However, while an existing nonconforming use generally cannot be prohibited by a zoning law, it is subject to reasonable regulation under the zoning power and in certain instances may even be eliminated (id.) as, for example, by a provision requiring the discontinuance of such use within a reasonable time period (Modjeska v Berle, 43 N.Y.2d 468 [1977]). Such a provision must be reasonable not only in the sense that it must relate to the purpose for which it was enacted, but it also must not unreasonably deprive an owner of all beneficial use of his property (id.).
We conclude that a village, acting under the police power, by local law may prohibit the raising and grazing of livestock on private property in areas of the village both adjacent to and part of its downtown business district, provided such law comports with the constitutional requirements of due process of law and equal protection. A village may not use its zoning power to prohibit the keeping of livestock on land presently being used for that purpose, but may provide for the discontinuance of such use within a reasonable period of time.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.