450 So.2d 1145 (1984)
LAMAR ADVERTISING ASSOCIATES OF EAST FLORIDA, LIMITED, Petitioner,
v.
The CITY OF DAYTONA BEACH, Respondent.
No. 83-734.
District Court of Appeal of Florida, Fifth District.
April 19, 1984.
*1147 Michael D. Martin of Martin & Martin, P.A., Lakeland, for petitioner.
Reginald E. Moore, Frank B. Gummey, III, and Robert G. Brown, Daytona Beach, for respondent.
FRANK D. UPCHURCH, Jr., Judge.
Lamar Advertising Associates of East Florida, Limited, petitions for a writ of certiorari seeking review of a decision of the Circuit Court for Volusia County rendered in its appellate review capacity.[1]
According to a joint stipulation of facts filed below, in October, 1981, respondent City of Daytona Beach charged petitioner in county court with violation of city ordinance 81-178 dealing with the regulation of billboards. Petitioner is in the business of outdoor advertising and has a number of billboards in the city, including nine on Main Street which were the subject of this action.
In December, 1968, the city, by ordinance, designated these and other billboards on Main Street as being nonconforming and required their removal within ten years. In early 1981, ordinance 81-178 was enacted and it gave petitioner until January, 1981, to remove these billboards. When petitioner failed to do so, the city brought the present charge.
Petitioner defended, claiming that ordinance 81-178 is unconstitutional on equal protection grounds and also violates the First Amendment to the United States Constitution. Petitioner also argued that under chapter 479, Florida Statutes, it was entitled to just compensation for the removal of its billboards.
On April 23, 1982, following trial, the county court ruled that the ordinance is constitutional and that petitioner is not entitled to compensation for the billboards. The court found petitioner guilty of violating the ordinance and ordered its president to have the signs removed within forty-five days.
Petitioner appealed to the circuit court which affirmed the county court's decision, except for the portion ordering removal of the signs within forty-five days, as to which the court found that the county court had no jurisdiction. This latter ruling is not questioned here.
The law is clear that where a conviction is obtained under an unconstitutional ordinance, an error of serious magnitude is presented and review by common law certiorari is proper. See Dresner v. City of Tallahassee, 164 So.2d 208 (Fla. 1964); Ellison v. City of Fort Lauderdale, 183 So.2d 193 (Fla. 1966). See also Combs v. State, 436 So.2d 93 (Fla. 1983). Therefore, ordinance 81-178, under which petitioner was prosecuted, must be examined to determine whether it is constitutional.
We begin with the principle that an ordinance is to be construed, if possible, in *1148 such a manner as will be conducive to its constitutionality. See Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976).
The ordinance is designed to regulate signs and billboards in Daytona Beach. Section 40-2 of the ordinance defines "billboards" as:
Outdoor advertising signs erected and maintained upon which advertising matter may be displayed and which generally advertise firms or organizations that, along with their goods, products, or services are not located on the same premises as the sign; and whose surface is sold, rented, owned or leased for the display of advertising material.
Section 40-5(f)(1) provides that "Billboards shall not be permitted in any location east of the Halifax River [the beachside] except on ocean piers." Billboards are permitted in a wide variety of areas on mainland Daytona Beach. Sec. 40-5(f)(2).
Certain signs are allowed under the ordinance in the non-pier areas of the beachside. Various signs, such as real estate signs, wall signs and roof signs (of a maximum size of 200 square feet) are permitted in commercially zoned areas and some signs such as real estate signs, development signs and subdivision identification signs are also permitted in residential areas.
Section 40-2 contains the following definitions for on-site and off-site signs:

On-site Sign. Any sign identifying or advertising a business, person, activity, goods, products or services located on the premises where the sign is installed and maintained, also known as a `pertinent' or `accessory' sign.

Off-site Sign. This is a third party sign. It is a sign that advertises goods, products, services or facilities or directs persons to a different location from where the sign is installed.
Petitioner's nine signs on Main Street are located on the beachside. Petitioner argues that by the above definitions, the city has protected on-site commercial messages on the beachside but that except for the piers, all opportunities for the presentation of noncommercial messages are eliminated. Petitioner claims that therefore, under Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), ordinance 81-178 is unconstitutional as violating the First Amendment.
Recent cases have established that ordinances regulating or prohibiting off-site advertising by billboards do not exceed the legitimate scope of a city's police power even though they are based primarily on aesthetic considerations. See City of Lake Wales v. Lamar Advertising Ass'n, 414 So.2d 1030 (Fla. 1982); City of Sunrise v. DCA Homes, Inc., 421 So.2d 1084 (Fla. 4th DCA 1982); Lamar-Orlando, Etc. v. City of Ormond Beach, 415 So.2d 1312 (Fla. 5th DCA 1982). However, an ordinance may not afford more protection to commercial speech than to noncommercial speech. Metromedia, Inc. v. City of San Diego.
In Metromedia, San Diego enacted an ordinance prohibiting "outdoor advertising display signs" except for on-site commercial signs and those fitting within twelve specified categories, such as governmental signs and religious symbols. The prohibited advertising signs included any sign that "directs attention to a product, service or activity, event, person, institution or business" conducted or sold other than on the premises where the sign is located. 453 U.S. at 494, 101 S.Ct. at 2885.
The Supreme Court struck down the ordinance, with the Court's plurality (White, Stewart, Marshall and Powell) finding that it violated the First Amendment by impermissibly affording more protection to commercial speech than to noncommercial speech, since, while an exception existed under the ordinance for on-site commercial advertisements, no similar exception existed for non-commercial speech. The plurality stated that if the city chooses to tolerate billboards at all, it cannot choose to limit *1149 their content to commercial messages. 453 U.S. at 513, 101 S.Ct. at 2985.[2]
One other interesting aspect of Metromedia is that a majority of the Court found that Metromedia, the advertiser, had standing to challenge the noncommercial advertising ban arising from the ordinance since "although the bulk of their business consists of off-site signs carrying commercial advertisements, their billboards also convey a substantial amount of noncommercial advertising." 453 U.S. at 504, 101 S.Ct. at 2890. This finding derived from the record below which indicated that the billboards in question were occasionally used for relaying political and social as well as commercial information to the public. See Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 610 P.2d 407, 411, 164 Cal. Rptr. 510, 514 (1980). In the instant case, the record does not indicate that petitioner's signs are used for anything but commercial advertising.
In any event, we find that ordinance 81-178 does not afford more protection to commercial than noncommercial speech. While the ordinance outlaws billboards on the beachside (except on the ocean piers), it allows for certain types of signs in commercially zoned areas such as wall and roof signs. The ordinance does not restrict these signs to commercial advertising use and indeed does not regulate the content of these signs, other than preventing them from advertising "firms or organizations that, along with their goods, products or services are not located on the same premises." In effect, the ordinance only prohibits off-site advertising, which, as noted above, is permissible. See City of Lake Wales v. Lamar Advertising; City of Sunrise v. DCA Homes, Inc.; Lamar-Orlando, etc. v. City of Ormond Beach.
Petitioner argues that the definition of "on-site" means that these signs must advertise only on-site commercial activities. However, this definition merely declares what an "on-site" sign is, i.e., a sign which identifies or advertises a business, etc. located on the premises where the sign is installed. It does not provide that signs in commercially zoned areas which are located on a particular business are permissible only if they advertise that business.[3] In summary, we conclude that the ordinance does not violate the First Amendment.[4]
The next question is whether ordinance 81-178 is defective on Fourteenth Amendment equal protection grounds. Petitioner argues that it is because it allows billboards on ocean piers, but not along Main Street, just a few hundred yards away. A city need only have a reasonable basis for such a distinction, Lamar-Orlando at 1316-18, and here, the city may have reasonably concluded that such advertising on the piers is less of a visual irritant and safety distraction than billboard advertising along densely developed beachside roads.
Finally, petitioner claims that the ordinance is invalid because it fails to provide compensation for the billboards. Chapter 479, Florida Statutes (1981), regulates outdoor advertising. Section 479.24(1), Florida Statutes, provides that:
Compensation shall be paid upon the removal of all signs lawfully in existence on Dec. 8, 1971 or signs lawfully erected which later become nonconforming.
*1150 The signs in question were lawfully in existence on December 8, 1971. Section 479.15(2), Florida Statutes, provides:
No municipality, county, local zoning authority, or other political subdivision shall remove, or cause to be removed, any advertisement or advertising structure without paying compensation in accordance with s. 479.24(1).
However, section 479.16, Florida Statutes, provides that certain advertising signs "are excepted from all the provisions of this chapter" and this includes:
(12) Advertisements, advertising signs and advertising structures within the corporate limits of cities and towns, adjacent to highways other than interstate and federal-aid primary systems.
In the instant case, the parties have stipulated that the signs in question are within the corporate limits of the City of Daytona Beach and are not adjacent to any interstate or federal-aid primary roads. While the county court correctly concluded that under chapter 479, compensation was not required for the removal of the signs, a question remains as to whether our constitutions[5] require that petitioner be compensated for the removal of its signs.[6]
We conclude that the city is not constitutionally required to compensate petitioner for its billboards. In Lamar-Orlando, this court cited a long line of cases which hold that amortization of nonconforming signs, if the period is reasonably long enough to allow the sign owner to recoup his investment, is a valid alternative to compensation. See, e.g., Modjeska Sign Studios, Inc. v. Berle, 43 N.Y.2d 468, 402 N.Y.S.2d 359, 373 N.E.2d 255 (N.Y.Ct.App. 1977); Suffolk Outdoor Advertising Co. v. Hulse, 43 N.Y.2d 483, 402 N.Y.S.2d 368, 373 N.E.2d 263 (N.Y.Ct.App. 1977); Lubbock Poster Co. v. City of Lubbock, 569 S.W.2d 935 (Tex.Civ.App. 1978); Donnelly Advertising Corp. v. City of Baltimore, 279 Md. 660, 370 A.2d 1127 (Md. Ct. App. 1977); City of Doraville v. Turner Communications, 236 Ga. 385, 223 S.E.2d 798 (1976); Markham Advertising Co. v. State, 73 Wash.2d 405, 439 P.2d 248 (1968).
Here, a reasonable amortization period was provided since by the terms of the 1968 ordinance, petitioner was put on notice that the signs were nonconforming and was given ten years to continue their use.[7]
We conclude that the portions of ordinance 81-178 challenged here are constitutional and DENY the writ.
COBB and SHARP, JJ., concur.
NOTES
[1] Florida Rule of Appellate Procedure 9.030(b)(2)(B).
[2] Justices Brennan and Blackmun, concurring in the result, concluded that the ordinance amounted to a ban on billboards and that such ban violated the First Amendment because San Diego failed to provide adequate justification for its substantial restriction on protected activity. Chief Justice Burger and Justices Stevens and Rehnquist, while each authoring separate dissenting opinions, basically agreed that the ordinance was constitutional and that a city may completely ban billboards.
[3] For instance, under the ordinance, a businessman may, on his roof or wall sign, urge that a particular candidate be elected or complain about a particular governmental policy.
[4] Another significant factor distinguishing this case from Metromedia is that here billboards are only proscribed on the beachside (excluding the piers) and not throughout the city, thus leaving open ample alternative channels for communication of information by billboards.
[5] U.S. Const. Amend. V, XIV; Art. I, §§ 2, 9, Fla. Const.
[6] This court in Lamar-Orlando did not resolve this question because the signs there were located on a federal aid primary highway and hence under sections 479.15(2) and 479.24(1), Florida Statutes, compensation was required.
[7] Any claim that petitioner is deprived of equal protection of the law because under chapter 479, and the Federal Highway Beautification Act (23 U.S.C. § 131(g)), compensation is mandated for other billboard owners, such as those located near federal highways or outside of cities, is without merit. Amortization, at least in this case, amounts to a reasonable substitute for lump sum compensation.