*820 OPINION OF THE COURT
George A. Murphy, J.
Defendant moves, in this case of apparent first impression, for an order pursuant to CPLR 3211 (a) (7) dismissing the complaint for failure to state a cause of action on the grounds that the statute which plaintiff seeks to enforce (i.e., restriction of the use of sheet metal security gates) is unconstitutional.
This case arises out of an ordinance enacted by the Board of Trustees of the Village of Hempstead wherein the Board amended subdivision (D) of Code of the Village of Hempstead § 50-28 which inter alia prohibits the use of metal sheets on the exterior of a premises in order to prevent or impede access into said premises. The restriction was allegedly enacted to improve the aesthetics of storefronts under the guise of promoting the health, safety and welfare of the residents of the Village of Hempstead.
Section 50-28 (D) (3) provides as follows:
"(3) Restrictions
"(a) No gate, barrier, screen, cover or similar device used for the purpose of securing any premises by preventing, blocking or impeding access or passage into the interior of said premises shall be erected or maintained in front of or behind any door, window or other opening, facing or fronting on a public road or highway, unless the entire installation, except for incidental supports, constitutes a security gate as defined in Subdivision (2) hereinabove.
"(b) When any security gate is not in use, it shall be removed or stored in such a manner so as not to be visible from the exterior of the premises.”
Section 50-28 (D) (1) defines the term "security gate” as follows: "security gate — A screen, open mesh, grill or other see through type of barrier which does not prevent the viewing of all or a substantial part of the interior of the premises from the exterior thereof, and which is located behind a door, window or other opening into any premises facing or fronting upon a public road or highway, and which is used for the purpose of securing any premises by preventing, blocking or impeding access or passage into the interior of said premises.” Section 50-28 (D) (4) provides as follows:
"(a) Existing devices, compliance.
"Any existing gate, barrier, screen, cover or similar device *821 used for the purpose of securing any premises by preventing, blocking or impeding access or passage into the interior of said premises, which was in existence prior to the date of the adoption of this Section, and which does not constitute a security gate as defined in Subdivision (2) hereinabove, shall be made to comply with the provision hereof or removed by the owner or other occupant of the premises wherein same is located within (6) months from the date of the adoption of this Section.
"(b) Exceptions from compliance.
"Notwithstanding anything set forth in this Section, temporary gates, barriers, screens, covers or similar devices may be installed and maintained as may be permitted within the discretion of the superintendent of the Building Department.”
Defendant SRA Realty Corp. is the owner of a commercial building located in downtown Hempstead, Long Island. The building is leased to both the United States Armed Forces for use as a recruitment office and to defendant Sal Abady for use as a retail store named Children’s World.
In 1986 defendants created steel security gates on the extension of their building in response to repeated incidents of vandalism and burglary. At the time the security gates were erected, there was no statute prohibiting their use. After the passage of the subject amended statute, defendant was served with a summons on two occasions for violating the amended ordinance and plaintiff commenced this action for a mandatory injunction to require the defendants to remove their present sheet metal security gates and conform with requirements of the statute.
At the public hearing conducted for the purposes of amending the Code provision pertaining to "safety gates,” the only person to comment was the Village’s Superintendent of the Building Department, who stated that the purpose of the amendment was to "rid the Village of the 'Ghetto-look’ that we see in South Jamaica, Harlem and the Bronx * * * [by] requiring] the merchants in the Village * * * [to] install a gate behind the glass or storefront * * * [, a] see-through type * * * where the interior of the store will be viewed from the outside.” The Superintendent also stated that the impetus to amend the security gate ordinance was that the Village believed that "the type of security gates that are on the front of these downtown business areas present a rather dismal appearance, with graffiti throughout.”
*822 A municipality may pass ordinances to promote the "public welfare” which includes the "health, safety, morals or general welfare of the community.” A validly passed legislative enactment is presumed constitutional (see, Wiggins v Town of Somers, 4 NY2d 215). This "exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or assumed, justifies the disputed measure, this court’s power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that 'no reasonable basis at all’ existed for the challenged portions of the ordinance [citations omitted]” (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11-12).
The express aim of the Village in enacting the challenged amendment was to enhance the aesthetic character of the area — a permissible goal (see, Berman v Parker, 348 US 26, 33 [1954]). Characterizing aesthetics as a psychological stabilizing force within a community, as one legal scholar has argued, could conform with the traditional notions of the scope of a municipality’s police power (see, Costonis, Icons and aliens: law, aesthetics, and environmental change, at 60-65 [1989]; Costonis, Law and aesthetics: a critique and a reformulation of the dilemmas, 80 Mich L Rev 355 [1982]). Notwithstanding that "aesthetics, in itself, constitutes a valid basis for the exercise of [a municipality’s] police power just as safety does (Suffolk Outdoor Adv. Co. v Hulse, 43 NY2d 483 * * *; Matter of Cromwell v Ferrier, 19 NY2d 263; People v Goodman, 31 NY2d 262; Rochester Poster Adv. Co. v Town of Brighton, 49 AD2d 272; 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 7.07, 11.54; 67 NY Jur, Zoning and Planning Laws, § 123),” such regulation which is enacted merely to enhance the aesthetics of a community, which is the obvious case here, generally does not provide the compelling reason for implementation with respect to existing structures or uses (Modjeska Sign Studios v Berle, 43 NY2d 468, 478). The *823 benefits gained by aesthetic improvement have been held not to outweigh the damage or loss suffered by those property owners adversely affected (Modjeska Sign Studios v Berle, supra). Stated succinctly, an exercise of the police power must be reasonable (Modjeska Sign Studios v Berle, supra).
A property owner has the right to use his property in a certain fashion and exercise reasonable means to protect and secure that property. A denial of that right solely on aesthetic grounds should be based upon a showing that " 'the offense to the eye * * * [is] substantial and * * * [has a] material effect on the community or district pattern” (Sackson v Zimmerman, 103 AD2d 843, 844, quoting Matter of Cromwell v Ferrier, 19 NY2d 263, 272, supra). The Village has not met its burden in this regard, nor has it shown how the benefit of the proposed substituted security system would outweigh the monetary loss of property and business of the defendants by the subject precipitous legislation.
Accordingly, the court finds that the Village’s ordinance prohibiting the use of security gates is not constitutionally valid as to these defendants nor enforceable as against them, and the complaint is dismissed.