■ In the Matter of Fort Ridge Builders, Inc., Respondent, v Zoning Board of Appeals of Town of Smithtown et al., Appellants.—In a proceeding pursuant to CPLR article 78 to review a determination of the zoning board of appeals, made after a public hearing, which denied petitioner's application for an area variance, the appeal is from a judgment of the Supreme Court, Suffolk County, entered January 5, 1978, which annulled the board's determination and directed that the area variance be granted and a building permit be issued. Judgment affirmed, without costs and disbursements. The zoning board of appeals made the following findings of fact which are relevant to the issues raised on this appeal: "A, The entire parcel is approximately *1.3 acres which is well within the R-43 zoning district requirement;* B, In 1966 *the applicant purchased the premises as two separate and distinct parcels.* C, Since that time, the 'out' parcel passed through a number of other persons and is not now owned by the applicant. D, *A building permit had been issued for the subject parcel in 1965-1966;* E, It appears that the *applicant had purchased the parcel on the strength of obtaining the permit"* (emphasis supplied). However, it also found: "G, There are no other flag lots in the *immediate* area of the subject parcel; H, The limited amount of frontage *would prevent reasonable ingress and egress of emergency* vehicles. It was testified that the applicant would put in a *12 to 18 foot wide driveway;* I, The variance, if granted, *would not be within the character of the neighborhood;* J, It appears that the applicant was aware of the split and as a builder *should have been alerted as to potential difficulties"* (emphasis supplied). In short, the sole reasons for disapproval of the petitioner's application for a variance were (1) the alleged problem of reasonable ingress and egress for emergency vehicles, (2) the claim that the variance, if granted, would not be within the character of the neighborhood, and (3) the claim that the petitioner should have been alerted to potential difficulties. Neither the first nor the second reason is supported by this record, and the third reason—in effect a claim of self-imposed hardship—will not in and of itself preclude the granting of an area variance *(Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449, 455; *Matter of Courtesy Estates v Schermerhorn,* 51 AD2d 966; *Matter of De Sena v Board of Zoning Appeals of Inc. Vil. of Hempstead,* 45 NY2d 105). The record indicates that the houses on hearby Lots Nos. 23 and 12 are nearly as far back from the road as the proposed house, and that the house on Lot No. 22 is further back. Furthermore, petitioner proposes to put in a 12- to 18-foot-wide driveway. In *Matter of Mastromonaco v Bartels* (16 AD2d 676) this court affirmed an order which directed the granting of a variance although the strip of land

connecting the "flag" plot with the roadway was only 17 feet wide *in toto.* Accordingly, the board's finding that emergency vehicles would have difficulty in gaining access to the subject parcel is completely arbitrary. As for the finding that the character of the neighborhood would be adversely affected, it is undisputed that in the area there are nine other flag lots with a frontage of 40 feet or less and three flag lots with a frontage of 50 feet. Finally, the contention made in the dissenting memorandum, that the petitioner illegally subdivided his land, was not raised by the appellants at any stage of the proceedings under review; nor was it argued on this appeal. Indeed, such a contention is at variance with the board's own finding that the petitioner "purchased the premises as two separate and distinct parcels." Gulotta, Cohalan and Margett, JJ., concur; Suozzi, J. P., dissents and votes to reverse the judgment and dismiss the proceeding on the merits, with the following memorandum: Petitioner, a corporation which has been in the custom building business since 1960, sought an area variance from the appellant board in order to build a house (and thereafter sell to a purchaser) on a flag-shaped lot having a 40-foot frontage on a road in a zone requiring frontage of 150 feet. The board denied the application on the following grounds: (1) a building permit issued to petitioner when it first purchased the subject property in "1965-66" was erroneously issued; (2) the property's flag shape and limited frontage on a road constituted a fire hazard; and (3) the erection of a house on this type of lot would adversely affect property values in the immediate vicinity. Special Term found that there was no proof that the building permit issued in 1965 was erroneously issued. It further found that there existed nine flag lots with frontage of 40 feet or less and three flag lots with frontage of 50 feet in the neighboring area and that surrounding home values had appreciated. Special Term held that the existence of these other flag shaped lots belied the board's claim that access for emergency vehicles was a problem. In conclusion, it held that petitioner had demonstrated "practical difficulties" and the denial of an area variance under these circumstances was arbitrary and capricious. The majority of this court has chosen to affirm the judgment entered at Special Term. I disagree with Special Term and the majority. In my view, the facts adduced on this record present a classic example of a self-created hardship by the petitioner which is sufficient to warrant a denial of an area variance. I now turn to the pertinent facts of this case. On November 5, 1965 the petitioner entered into a contract to purchase a parcel of land measuring approximately 508 feet by 200 feet for $15,500. The contract described the parcel as: "known and designed as parts of Lots #5 and #6, on a certain map entitled, 'Map of Hickory Hill, Section "A", situated at Fort Salonga, Town of Smithtown, Suffolk County, New York, belonging to Ethel Bartley', which said map was filed in the Office of the Clerk of the County of Suffolk on April 1, 1946, as Map #1477, more particularly bounded and described in Schedules 'A' and 'B', which Schedules are attached hereto and made a part of this contract." The land described in Schedule "A" is a 160-foot by 272-foot parcel. The land described in Schedule "B" is the flag-shaped parcel with the 40-foot frontage which is the subject of the instant appeal. Purchased together as one parcel, the property had frontage of 200 feet on a road and also satisified the other area requirements of the ordinance. The contract of sale was a contingent contract. The condition was as follows: "It is understood and agreed that the sale of these premises is subject to purchaser obtaining a building permit from the Building Department of the Town of Smithtown for Parcel 'B'. The purchaser is to make immediate and diligent application for the aforementioned building permit. It is further

understood and agreed that in the event the purchaser is unable to obtain the aforementioned building permit for Parcel 'B', on or before December 15, 1965, the purchaser, by written notice to the attorney for the seller, which notice shall be given prior to December 17, 1965, may cancel this contract and the seller shall return to the purchaser all and any monies deposited under the terms of this contract. Thereupon this contract shall be deemed null and void and neither party shall be obligated to the other." Although the above-cited language refers only to the flag-shaped parcel and does not refer to the other parcel, the contract also provided that: "Said premises are sold and are to be conveyed subject to: * * * 4. Subject to covenants, restrictions of record, if any, provided same does not prohibit the building of a one-family residential house on each of the parcels described in Schedules A & B". At the hearing held on the application for a variance, the petitioner's president testified that the contract was indeed contingent on his obtaining building permits for both parcels. On November 16, 1965, two building permits were issued, one for the front parcel on Schedule "A" and one for the flag-shaped parcel on Schedule "B". After obtaining these building permits, title closed on January 13, 1966 when a deed to the two parcels was received by the petitioner. On the very same day, at the time of the closing and the delivery of the deed to petitioner, it conveyed the front parcel on Schedule "A" to Three Village Construction, Inc. That parcel was subsequently conveyed two more times, once in 1969 and again in 1972, to its present owner. The petitioner retained the flag-shaped parcel and on May 24, 1977 entered into a contract with a vendee to construct a home on the parcel and to sell it to him. The petitioner then went to the building department to renew the prior building permit issued in November, 1965. At that time, it was advised that it needed an area variance. Thereafter, its application for a variance was denied by the board. In my view, the board's determination should be sustained. Although there is no clear indication as to the requirements of the zoning ordinance in 1965 with regard to minimum frontage on a road, it can be reasonably assumed that it did not differ from the zoning ordinance presently in effect, which requires 150-foot frontage on a road. Moreover, there is no ordinance which could have been in effect in that area of Smithtown at that time which would have permitted a building plot to have frontage on a road of only 40 feet and for which a permit could have been legally issued without a variance. Therefore, it is clear that these permits were improperly granted in 1965 without an area variance and the petitioner acquired no vested rights to build on the flag-shaped parcel. Nor can the petitioner claim that its reliance on these permits forms the basis of an estoppel against the appellants. The petitioner was an an experienced and knowledgeable builder and knew or should have known that these permits were illegally and improperly issued. In this regard, it should be noted that in its petition challenging the board's denial of an area variance, the petitioner alleged that it believed that the building permits when issued were in fact properly issued and that this belief was shared by the appellant building inspector. However, the petitioner did not call the latter as a witness at the hearing before the board. From this analysis, it is clear that the petitioner originally purchased one parcel which satisfied all of the area requirements of the zoning ordinance. Under these circumstances, the proper route for the petitioner would have been to file a subdivision map with the planning board and obtained the latter's approval of that subdivision. Instead, on the date of closing, the petitioner effectively subdivided this property without filing a map and obtaining the necessary approval of the planning board, by conveying the parcel on

Schedule "A" and retaining the flag-shaped parcel in its own name. Clearly, whatever difficulty the petitioner now finds itself in, was self-created by its illegal subdivision of its land by the sale of the front parcel shortly after acquiring it. It has been stated by one authority that "If the peculiar circumstances which render the property incapable of being used in accordance with the restrictions contained in the ordinance have been themselves caused or created by the property owner or his predecessor in title, the essential basis of a variance, i.e., that the hardship be caused *solely* through the manner of operation of the ordinance upon the particular property, is lacking" (3 Rathkopf, Law of Zoning and Planning, ch 48, § 1). The case of *Matter of 113 Hillside Ave. Corp. v Zaino* (27 NY2d 258) is clearly applicable to the facts at bar. In *Hillside,* the corporate petitioner owned a lot (Lot No. 14) with street frontage of 25 feet while the ordinance required street frontage of 75 feet. The lot was originally part of a single larger plot which petitioner's predecessor in title, a brother of a half owner of the corporation, had acquired in 1965. The latter subdivided the original parcel into three smaller lots and conveyed Lot No. 14, along with an adjoining lot (Lot No. 15) to petitioner. Lot No. 16 was sold to a third party. Lots Nos. 15 and 16 satisfied all of the requirements of the zoning ordinance. Petitioner obtained building permits for Lots Nos. 14 and 15 and proceeded to build on Lot No. 15. After the building on Lot No. 15 was completed, it was sold. Thereafter, the village board of trustees revoked the building permit for Lot No. 14. After unsuccessfully challenging that revocation—the court held that the application for the permit did not conform to the requirements of the village ordinance (see *113 Hillside Ave. Corp. v Village of Westbury,* 27 AD2d 858) —the petitioner applied to the village board of appeals for an area variance. The board denied the application. Special Term annulled that determination and directed that variances be granted. The Appellate Division reversed and remanded to the board for a new hearing pursuant to the principles set forth in *Matter of Fulling v Palumbo* (21 NY2d 30), which had been decided after Special Term handed down its decision. After the new hearing, the board again denied the variance on the grounds that it would: (1) change the essential character of the area; (2) impair public health, safety and welfare; and (3) allow petitioner to benefit from its own deliberate act of effecting the "split off" *(Matter of 113 Hillside Ave. Corp. v Zaino, supra,* p 261). The board's determination was again challenged. Special Term again annulled the board's determination and directed that the variances be granted. This time the Appellate Division affirmed the judgment entered at Special Term. However, the Court of Appeals reversed the Appellate Division, dismissed the petition and reinstated the board's determination. In so doing, it advanced as its first ground for reversal the third reason advanced by the board, i.e., that the condition for which the variance was sought was a self-created hardship. In this regard, the court specifically stated *(Matter of 113 Hillside Ave. Corp. v Zaino,* 27 NY2d 258, 261, *supra):* "It is settled that the courts will not interfere with the determination made by a zoning board * * * which denies a requested area variance where * * * the substandard condition results from the owner's own decision to subdivide his property in such a way as to create one or more nonconforming plots". Although a self-imposed hardship does not prevent a board from granting a variance in a proper exercise of discretion *(Conley v Town of Brookhaven Zoning Bd. of Appeals,* 40 NY2d 309), "the existence of a self-created hardship does not entitle the landowner to demand a variance" *(Matter of Cowan v Kern,* 41 NY2d 591, 597). On this record, it would be relatively difficult to demonstrate that the petitioner would not have been able to realize a reasonable

return if the use of the combined parcels "A" and "B" was limited to a single-family house. The fact that each of these parcels has been and can be sold at a price in excess of the $15,500 paid for both parcels, suggests that the petitioner would not have had any difficulty in disposing of the combined parcels with or without a house constructed thereon at a price sufficiently in excess of the purchase price to have realized a reasonable return on its investment. For these reasons, I conclude that the board did not abuse its discretion in denying the petitioner's application for an area variance. The board's determination should be sustained (see *Matter of Cowan v Kern, supra*).