In the Matter of ALLEN J. OSTROFF et al., Appellants v JOSEPH SACKS et al., Constituting the Board of Zoning Appeals of the Incorporated Village of East Rockaway, Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondents, dated October 25, 1976 and made after a hearing, which denied petitioners' application for permission to maintain a second kitchen in a one-family dwelling, petitioners appeal from a judgment of the Supreme Court, Nassau County, entered April 6, 1977, which dismissed the petition. Judgment affirmed, with costs. We do not believe that the determination in *Matter of Baskin v Zoning Bd. of Appeals of Town of Ramapo* (40 NY2d 942, revg 48 AD2d 667 on the dissenting memorandum of Shapiro, J.), vitiates the findings and actions of the board of zoning appeals in this matter. The town's zoning board of appeals, after a public hearing, granted Baskin's application for a variance permitting him to install a second kitchen in a one-family residence he was constructing for himself and his son and daughter-in-law on a plot he owned in a one-faimily residentially zoned area. As a basis for its determination granting the variance, the zoning board in *Baskin* found that (1) differences in the degree of religious observance between the applicant and his son and daughter-in-law required him to have a separate kitchen, (2) the structure being built had a single entrance, a single boiler and only one utility room, (3) the staircase separating the upstairs and downstairs consisted of an open staircase and (4) there was a single entrance to the premises. As Mr. Justice Shapiro correctly noted, in his dissent in *Baskin* the fact that a house is designed so that it could be transformed into a two-family residence because it has a duplication of kitchen and other facilities, is not determinative. The standard is not the designed or potential use, but the actual use, and the facts in *Baskin,* namely the single entrance, the one utility room and the open staircase separating the upstairs from the downstairs, justified the exercise of discretion by the zoning board in determining that the use was for one family and that the need for a second kitchen in the house for religious reasons was supported by a sufficient showing or practicality. Furthermore, since the determination in *Baskin* granting the variance was based on a rational basis, the courts should not have substituted their judgment for that of the zoning board. However, the facts in the proceeding now before this court are somewhat different. According to the record, the petitioner husband, in June, 1974, while he was living in Brooklyn with his wife, children and parents, appeared before the respondent board of zoning appeals on an application for a variance for the approval of plot plans which included an encroachment into the rear yard on the subject parcel, of which he and his wife were contract vendees. At the hearing, the petitioners specifically requested approval of the plan which had the kitchen on the second level of the house instead of the first level. Aware of the possibility of conversion of the house to a two-family dwelling because of the nature of the building itself, a member of the board put the following questions to the

petitioner husband and received the following answers: "MR. TRACY: Are you going to have a kitchen on the first floor? MR. OSTROFF: *No kitchen.* MR. TRACY: No kitchen on the first floor? MR. OSTROFF: *No way.* I am making provisions that in case, at some future date it is difficult for my parents to come upstairs, I am planning to have a stairway elevator for that purpose. *It is being so constructed that I can put it in.*" (Emphasis supplied.) Moreover, earlier in the hearing the following colloquy took place: "THE CHAIRMAN: According to the plans as submitted, it appears to us that you have an unusual home in the sense that your kitchen facilities would be on the second floor? MR. OSTROFF: That's correct. THE CHAIRMAN: Are there any provisions for kitchen facilities on the first floor? MR. OSTROFF: No, there are not. THE CHAIRMAN: *There will be no piping, no allowance for kitchen facilities on the first floor?* MR. OSTROFF: *No.*" (Emphasis supplied.) The variance was approved by the board and, subsequent thereto, the house was built; petitioners took occupancy early in 1975. Thereafter, and without the permission of the board or of any village authority, petitioners constructed a second kitchen in the lower level of the house. Before that, a refrigerator had been installed on that level for his parents; later a stove was installed and, finally, the entire kitchen. When the village building department became aware of the violation, it instructed the petitioners to remove the kitchen. They then, *after the fact,* applied for a building permit to validate the illegal use. The permit was denied and an application for a variance was made. At the hearing, the petitioner husband stated that he needed the extra kitchen because his mother was ill, could not climb stairs and needed a separate place to cook because she followed religious dietary restrictions while he and his wife did not. However, neither parent of the petitioner husband testified as to the need for a second kitchen. Evidence was also adduced that the petitioner husband's father, mother and uncle were all living on the main or first floor and that while the house was under construction, plumbing and a high voltage line (essential for the operation of an electric stove) were installed for use on the first floor in the room where there is now a kitchen and which petitioners had indicated in their building plans would only be used as a den. At the earlier hearing the petitioner husband had testified that the plans also called for a stairway to the second floor from the outside, as well as one inside. Thus, each floor had a separate access from the outside. From the aforegoing recital of facts, we believe the determination of the board is fully supported by the record and that Special Term's dismissal of the petition was justified. From the outset it is manifest that petitioners, notwithstanding assurances to the contrary, fully intended to construct the subject house with two separate housekeeping units and that the first floor would be used as a separate apartment by a nonfamily group, to wit, Mr. Ostroff's father, mother and uncle. Moreover, unlike *Baskin* (40 NY2d 942, revg 48 Ad2d 667, *supra),* where the petitioner openly and honestly sought the installation of a second kitchen for religous dietary purposes, the petitioner husband resorted to deceit and subterfuge to mask his true intentions. Putting it bluntly, the assurance given by Mr. Ostroff to the board that in "no way" did he intend to place a kitchen on the first floor, should be categorized as a deception in view of the fact that he had heavy duty wiring and plumbing placed into the first floor "den" during construction of the house for its easy conversion to a kitchen. Such conduct fully warrants the lack of credence given his testimony by the board after the second hearing. Other facts, in addition to Mr. Ostroff's untoward behavior, demonstrate that the decision of the board is supported by substantial evidence. The physical layout of the house is such that the

petitioner husband's parents and uncle have a separate apartment on the first floor, the kitchens are on separate floors and the entrances to the two units from the outside are completely separate. Assuming Mr. Ostroff would place a covenant restriction on the record indicating that the house is a one-family residence, as he promised he would do at the second hearing, such restriction would not change what is now a *de facto* two-family residence. Mr. Ostroff's duty to the board was no less than that which he would owe to a court in the same circumstances, namely, to be open and honest in his presentation and not resort to subterfuge. Therefore, we are of the opinion that, because of Mr. Ostroff's actions in this matter, the petitioners should be estopped from having their application approved. Accordingly, we affirm.

Hopkins, J. P., Damiani and Titone, JJ., concur; Rabin, J., dissents and votes to reverse the judgment and grant the petition, with the following memorandum: The essential issue on appeal is whether the mere installation of a second kitchen is sufficient to transform a one-family residence into a two-family residence. Unlike the majority, I believe that the determination in *Matter of Baskin v Zoning Bd. of Appeals of Town of Ramapo* (40 NY2d 942, revg 48 AD2d 667) is dispositive of the instant proceeding and, therefore, I would reverse. There is no question that the petitioners' residence has the potential for use as a two-family home and that the petitioner husband had demonstrated bad faith in his dealings with the zoning board. However, our inquiry must be restricted to actual rather than potential use, and bad faith is insufficient to convert a legal use into an illegal use. Upon review, the record indicates that except for the second kitchen, the design of the petitioners' home was approved by the board of zoning appeals. This design anticipated use by the family unit consisting of the petitioners, their children and the parents of the petitioner husband. It was originally represented to the board that the husband's parents observed the Jewish *kashrut* laws and, therefore, would eat separately from the remainder of the living unit. At the subsequent hearing, now under review, the petitioner husband testified that the original arrangement proved impractical and that the inherent difficulty of using the same kitchen was exacerbated because of his mother's deteriorating medical condition which made use of the stairs quite difficult. The petitioner husband solved these problems by installing a second kitchen which was more readily accessible to his parents. The installation of this kitchen did not materially alter the essential design and permitted use of the house. The various factors referred to by the majority, such as the outside stairway and the largely separate living quarters, were all part of the originally approved design. In addition, the inside stairway remains open and movement between floors is entirely unencumbered. The house has only one heating unit and one utility room. More importantly, the residence is still occupied by the same family unit. The petitioner husband testified that he essentially supports the entire family unit and that he claims his parents as dependents for tax purposes. He also supports his elderly bachelor uncle, who has stayed with him since suffering a severe heart attack and who can no longer care for himself. No rent is paid to the petitioners. As stated in *Matter of Stafford v Incorporated Vil. of Sand Point* (200 Misc 57, 60), "The using of a dwelling for livng purposes by a son, his family * * * and his mother and sister, in the absence of evidence to the contrary, may not be said to be the setting up of two separate family units who are living not under a single head or management". The instant record contains no evidence to rebut the presumption that the petitioners' family is occupying the residence as a single-family unit. The luxury of a second kitchen for the convenience of certain family members has been expressly

recognized as consistent with one-family zoning regulations (see *Matter of Baskin v Zoning Bd. of Appeals of Town of Ramapo, supra*). It is apparent that if the petitioners had followed proper procedure and applied for the variance prior to installation, it would have been an abuse of discretion to deny the variance. The failure to follow the proper procedure does not convert a proper use into an improper one. The testimony referred to by the majority does not support the inference that approval of the petitioners' dwelling was contingent upon the petitioner husband's representations that there would not be a second kitchen. That testimony was given in the course of a hearing which was primarily concerned with the proposed construction of a breezeway between the house and the garage. At no time was it indicated that the proposed design, which anticipated living quarters for the petitioner husband's parents on the ground floor, would have been disapproved if the design had included a second kitchen. Indeed, in accordance with *Baskin,* any such disapproval would have been improper. Zoning ordinances cannot be used to arbitrarily destroy the tradition that a family unit spanning several generations may live together under one common roof. There can be no question that the occupants of the petitioners' residence comprise one family (see *Matter of Stafford v Incorporated Vil. of Sands Point,* 200 Misc 57, *supra; Matter of Baskin v Zoning Bd. of Appeals of Town of Ramapo,* 40 NY2d 942, revg 48 AD2d 667, *supra).* Thus, upon this record, it was an abuse of discretion to deny the variance.