OPINION OF THE COURT
Barbara G. Zambelli, J.
Petitioner Caspian Realty, Inc. is the owner of real property situated within the Town of Greenburgh, New York, and located on the southwest corner of the intersection of Central Park and North Washington Avenues. The property is designated on the Town’s tax map as section 24, block 8343, lots 1, 2 and 4, and is situated within the Central Avenue, or “CA,” District under the Code of the Town of Greenburgh (the Code). Located on petitioner’s property is a single story retail building which is operated by petitioner as “Montaage Furniture” and which sells high quality retail furniture and home accessories. The building, which has a street address of 155 North Central Avenue, includes a first floor of 6,208 square feet in size and a lower level of the same size (thus, 12,416 square feet total). Also on the property is a paved parking area with 31 striped parking spaces and 2 off-street loading spaces.
Petitioner brings this CPLR article 78 action seeking to reverse, annul and set aside the decision adopted by respondent Zoning Board of Appeals of the Town of Greenburgh (the ZBA) on November 16, 2006 and filed with the Town Clerk on December 15, 2006, as “arbitrary and capricious; irrational; affected by error of law; and unsupported by substantial evidence,” which decision denied area variances to petitioner in regard to the floor area ratio (FAR) and parking space requirements contained in section 285-29.1 (C) (1) and (5) of the Code.[1] The granting of such variances would allow the petitioner to continue to utilize the lower level of the building as retail showroom space. It is undisputed that petitioner has been using the lower level for retail space in violation of those provisions of the Code since the opening of the store.
Petitioner purchased the property in or about 1995, and redeveloped the property and constructed the building at issue *696 in 2003. Prior to constructing the building, petitioner applied for the requisite permits and approvals from the Town, including obtaining site plan approval from the Planning Board. The Planning Board issued site plan approval to petitioner on or about June 2002, which approval authorized construction of the building and the parking lot.
As construction of the building progressed, but before a certificate of occupancy (C/O) was issued, petitioner began preparing the lower level of the building for retail space by installing partitions, walls, molding, finishes and carpeting. Sometime after petitioner had completed construction and received its C/O from the Town, and several months after the store opened, the Building Department was notified that the lower level of the building was being utilized for retail display and zoning violations were issued.
While the zoning violations against petitioner were pending in the Greenburgh Justice Court, petitioner filed an application for variances with the respondent ZBA to increase its FAR from .134 to .268 and to reduce the number of necessary off-street parking spaces from the required 62 to 33 in order to legalize its use of the lower level for retail purposes. The ZBA heard testimony on petitioner’s application at meetings held on February 16, 2006, April 20, 2006, May 18, 2006, June 15, 2006, August 31, 2006 and September 21, 2006. At these various hearings, the petitioner offered its reasons why the variances should be granted pursuant to Town Law § 267-b (3) (b) and offered the testimony and report of Nathaniel J. Parish, AICP of Parish Weiner and Maffia, Inc., a planning and consulting firm, who opined that the proposed variances would have no significant impact on any planning factors considered in land use decisions. At these hearings, the ZBA also heard from property owners residing next to or near the property regarding their opposition to the variances and their complaints against petitioner. The ZBA considered petitioner’s application at its meetings on October 17 and November 16, 2006, and on November 16, 2006, the ZBA voted unanimously to deny petitioner’s request for variances. The ZBA decision was filed with the Town Clerk on December 15, 2006.
Petitioner argues that the respondent ZBA’s decision was “arbitrary and capricious; irrational; affected by error of law; and unsupported by substantial evidence” because the ZBA based its decision not on the criteria set forth at Town Law § 267-b (3) (b), but rather upon its conclusion, which petitioner *697 asserts is erroneous, that petitioner had deceived the Town of Greenburgh by using the lower level of the building for retail space without proper approvals. Petitioner asserts that instead of applying the required statutory test, the ZBA acted beyond its authority to punish petitioner out of a concern that the granting of the variances would condone such conduct and that this would be detrimental to the health, safety and welfare of the community. Petitioner further argues that its expert report established that there would be no adverse effect from the granting of the variances, that the complaints made by the public for the hearing were unrelated to the variances at issue and that the ZBA had granted similar variances to other furniture stores in the past. For these reasons, petitioner urges that the decision of the respondent ZBA be annulled.
Respondent argues that the petition should be dismissed because it has established through documentary evidence the falsity of petitioner’s claim that it always thought that it was appropriate to use the lower level space for retail use. Respondent instead contends that these documents show that petitioner deliberately misled the Town, and is trying to mislead this court, by arguing that the Town had always been aware of petitioner’s intention to use the lower level for retail space.[2] As to the complaints voiced by petitioner’s neighbors at the public hearings, respondent submits that these complaints belie the assertion that the granting of the variances would have no significant impact; while these complaints are about garbage, truck deliveries and property maintenance, it cannot be said that such complaints do not necessarily arise out of petitioner’s decision to utilize the property at double its approved intensity. Lastly, respondent argues that its grant of variances to other furniture stores does not provide a basis for granting petitioner’s requested variances because the other variance applications involved properties with larger lot sizes that could accommodate additional parking if necessary in the future and those ap *698 plicants sought variances before they began using the spaces in question. For these reasons, respondent urges dismissal of the petition.
Local zoning boards are vested with broad discretion in considering applications for area variances, and judicial review is limited to determining whether the action taken by the board was illegal, arbitrary, or an abuse of discretion (Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; Matter of Ifrah v Utschig, 98 NY2d 304, 308 [2002]; Matter of Martino v Board of Zoning Appeals of Inc. Vil. of Great Neck Plaza, 26 AD3d 382, 383 [2d Dept 2006]; Matter of Peconic Shores Dev. v Board of Zoning Appeals of Town of Brookhaven, 19 AD3d 600, 601 [2d Dept 2005]). A determination of a zoning board should be sustained if it has a rational basis and is not arbitrary and capricious (Matter of Sasso v Osgood, 86 NY2d 374, 384 [1995]; Matter of Martino v Board of Zoning Appeals of Inc. Vil. of Great Neck Plaza, supra; Matter of Halperin v City of New Rochelle, 24 AD3d 768, 770 [2d Dept 2005]; Matter ofCFS Realty Corp. v Board of Zoning Appeals of Town of N. Hempstead, 7 AD3d 705, 706 [2d Dept 2004]).
In determining whether to grant an application for an area variance, a zoning board must engage in a balancing test weighing the benefit to the applicant against the detriment to the health, safety, and welfare of the neighborhood or community {see Town Law § 267-b [3] [b]; Matter of Sasso v Osgood, supra; Matter of Martino v Board of Zoning Appeals of Inc. Vil. of Great Neck Plaza, supra; Matter of CFS Realty Corp. v Board of Zoning Appeals of Town of N. Hempstead, 7 AD3d 705 [2d Dept 2004]; Matter of Stone Landing Corp. v Board of Appeals of Vil. of Amityville, 5 AD3d 496, 496-497 [2d Dept 2004]; Matter of Scimone v Humenik, 1 AD3d 370, 370-371 [2d Dept 2003]). In making its determination, the zoning board must also consider whether (1) an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created if the area variance is granted; (2) the benefit sought by the applicant can be achieved by some method, feasible to the applicant, other than an area variance; (3) the requested area variance is substantial; (4) the proposed variance will have an adverse effect or impact on physical or environmental conditions in the neighborhood or district if it is granted; and (5) the alleged difficulty was self-created (see Town Law § 267-b [3] [b]; Matter of Sasso v Osgood, supra-, Matter of Martino v Board of Zoning Appeals of Inc. Vil. of Great Neck Plaza, supra).
*699 In its decision in this case, the ZBA found that “[t]he benefit to the applicant from the requested variances is outweighed by the adverse impact that granting the variances would have on the health, safety and welfare of the neighborhood and Town and on future compliance with the planning, building and zoning laws of the Town.” (Emphasis added; CR 267.) After outlining the reasons for its finding that petitioner deliberately concealed its intention to use the basement as retail space throughout its appearances before town agencies, the Board concluded that:
“In view of this history, any variance to allow the applicant to perpetuate this deceit would undermine respect for and compliance with the Town’s planning, building and Tax Laws, and should not be granted. The benefit to the applicant of permitting them to continue to benefit from using this space for selling is clearly outweighed by the detriment to the Town and the citizens and the commercial operations in the Town that comply with these laws and regulations.” (CR 267.)
The ZBA decision then states that the applicant’s use of the basement for retail space has caused a significant burden on the neighboring property owners, citing to the neighbors’ complaints about noise from garbage collection and trucks improperly backing up into the parking lot, which the ZBA contends is a result of the placement of the building on the lot (CR 267-268). In this same paragraph, the decision also notes that the variances granted to the other furniture stores in the district are factually distinguishable from petitioner’s application, and that, in any event, the applicants in those cases sought variance relief from the Town prior to using the lower levels for retail sales (id.). The decision concludes by noting that the variances requested are substantial, with a requested FAR increase of 100% and a parking decrease of 50% and that petitioner’s hardship is self-created (CR 268).
The plain language of the decision itself makes clear that the basis upon which the variances were denied was not because the benefit to the applicant in granting the area variances themselves was outweighed by the detriment to the health, safety and welfare of the community, but rather because the petitioner’s actions in misleading the Town as to its intent regarding the use of the lower level of the building was viewed as detrimental to the Town’s interest in enforcing its zoning *700 code. In other words, the record demonstrates that the variances were denied because respondent did not want to reward what it viewed as petitioner’s dishonest behavior. Thus, the issue is whether petitioner’s misrepresentation of its intended use for the lower level of the building is a proper basis upon which the ZBA can premise its denial of variances.
As an initial matter, petitioner’s argument that it was unaware that it could not use the lower level of the building as retail space is disingenuous. While the parties have submitted conflicting affidavits as to whether the petitioner was aware that it could use the lower level of the building for retail space and whether the Town was made aware of petitioner’s intent of using both levels of the building, respondent has provided significant documentary evidence which belies petitioner’s claim of ignorance and which demonstrates that petitioner repeatedly represented to the Planning Board that the building was to be a single story structure of approximately 6,200 square feet with a FAR of .134 (see Lieberman affidavit, exhibit 1 — Jan. 30, 2002 Planning Board meeting transcript, at 7; McLaughlin affidavit, exhibit 3 — minutes of Feb. 21, 2000 Planning Board meeting; exhibit 4 — notice of public hearing on petitioner’s site plan application; exhibit 5 — letter from petitioner’s attorney to Town Supervisor and Board; exhibit 6 — petitioner’s revised environmental assessment form; exhibit 8 — letter from petitioner’s architect to Town Building Inspector; exhibit 11 — table submitted to the Planning Board on June 12, 2002; see also Lucido affidavit — exhibits A, B, C, floor plans for Montaage Furniture). Clearly, the figures of 6,200 square feet and a FAR of .134 could only relate to the use of one floor of the building, whose entire square footage, with both levels, is approximately 12,400 square feet (requiring 62 parking spaces under the Code) and has a FAR of .268, which is significantly in excess of the Code allowance of .135. Moreover, these documents demonstrate that petitioner was aware that if the building had a FAR in excess of .135 and a square footage greater than 6,200, that variances would be required (see McLaughlin affidavit, exhibit 6 — petitioner’s revised environmental assessment form; exhibit 8 — letter from petitioner’s architect to Town Building Inspector; exhibit 11 — table submitted to the Planning Board on June 12, 2002). On the basis of this evidence, since the time petitioner was proceeding before the Planning Board in 2002-2003, it clearly was aware that only the first floor of the building could be used as retail space without the need for variances. When petitioner *701 constructed the building, it admittedly did so in such a way so as to utilize the lower level for retail space — installing carpets, molding, partitions and a large stairway (Amir Eatemadpour affidavit HU 13, 14), and it has operated the establishment as a two level retail furniture store since opening {id. H 16). Thus, the evidence supports respondent’s conclusion that petitioner deliberately misrepresented the extent of its intended use for the property to the Planning Board in an effort to avoid the need to apply for variances in order to legally use the lower level of the building for retail space.
In support of its argument that petitioner’s deliberate misrepresentations to the Planning Board regarding its use of the lower level are a proper basis upon which to premise its denial of petitioner’s request for variances, respondent cites to Matter of Holy Spirit Assn, for Unification of World Christianity v Rosenfeld (91 AD2d 190, 201 [2d Dept 1983]), wherein the Court held that misrepresentations to a zoning board were a sufficient basis to justify denial of a special use permit, and Matter of Ostroff v Sacks (64 AD2d 708 [2d Dept 1978]), wherein the Court held that petitioner’s lack of candor and honesty in representing the intended use of his property to the zoning board was a proper basis upon which to deny a request for a variance. However, as petitioner points out, these cases were decided prior to the 1992 effective date of the current version of Town Law § 267-b. Thus, the question arises as to whether under the current version of Town Law § 267-b, respondent may consider an applicant’s prior misrepresentations to the Town when considering that applicant’s request for area variances.
Under the former version of the Town Law, zoning boards had authority to grant both use and area variances provided that “the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.” (Town Law former § 267 [5]; see also Matter of Sasso v Osgood, 86 NY2d at 380.) The statute did not set forth separate tests for use and area variances. As a result of confusing case law, decisions providing varying standards and inconsistent judicial interpretations, the Legislature adopted the current version of Town Law § 267-b (3) (b) which distinguishes between use and area variances and provides for the five point balancing test referred to supra that enumerates the relevant considerations to be considered by zoning boards in deciding applications for area variances {see Rice, Practice Commentaries, McKinney’s Cons Laws of NY, Book 61, Town Law § 267-b, part III [A] [“AREA *702 VARIANCE STANDARDS”]). The current version of the statute does not require that in deciding applications for area variances, “the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done.”[3]
Since the adoption of the current version of Town Law § 267-b (3), it has been held that this statute provides the exclusive test for the granting or denying of an area variance (see Matter of Sasso v Osgood, supra; Matter of Baker v Brownlie, 248 AD2d 527, 528 [2d Dept 1998]). The criteria to be applied by a zoning board in evaluating applications for variances derive from this law, and a zoning board may only exercise the authority properly delegated to it (see Matter of De Sena v Board of Zoning Appeals of Inc. Vil. of Hempstead, 45 NY2d 105, 109 [1978]). As the current version of Town Law § 267-b (3) does not provide a basis for denying a request for an area variance due to an applicant’s misrepresentations, this court finds that, as a matter of clear statutozy construction, such misrepresentations are not a factor which may be considered by a ZBA in deciding such an application. While this court condemns petitioner’s conduct in misleading the Town in regard to its true intended use for the property, and recognizes respondent’s attempt to protect the Town by discouraging behavior like that of petitioner, as a matter of law, respondent exceeded its authority by considering factors other than those set forth in the Town Law, namely, the potential negative impact of granting petitioner’s variances on the future enforcement of the Code.
Respondent’s decision on the variances focuses on petitioner’s misrepresentations as a basis for denial and addresses the criteria set forth in Town Law § 267-b (3) (b) only within the context of that behavior. The decision therefore fails to address what the effect of granting variances specifically as to FAR and parking spaces would have on the community. As to whether an undesirable change will be produced in the character of the neighborhood and whether the proposed variances, and not petitioner’s dishonest behavior, would have an adverse effect on the physical or environmental conditions in the neighborhood, respondent cites to the various complaints made by neighbors
*703 at the public hearings in support of its finding that the use of the lower level for retail has had such an undesirable adverse effect. However, the record demonstrates that these complaints were for garbage pickups occurring before 9:00 a.m. (see e.g. CR 177, 190, 212, 260), commercial vehicles being parked on the property overnight (see e.g. CR 191, 228), tractor trailers making deliveries by improperly backing into the property (see e.g. CR 177, 231, 261), maintenance of trees on the property (see e.g. CR 207, 229, 238, 263) and the condition of an adjacent lot owned by two of petitioner’s owners and not part of the property at issue (see e.g. CR 208, 211, 232, 237, 259). Contrary to respondent’s contention, the record fails to support that these complaints are related to the requested variances at issue, i.e., an increase of FAR and a decrease of required parking spaces. Rather, these complaints were generalized community opposition to petitioner’s use of the property, which is an insufficient basis upon which to premise a denial of a request for variances (Matter of Marro v Libert, 40 AD3d 1100 [2d Dept 2007]). As these complaints are unrelated to a request for a FAR variance or a parking variance, it was improper for the ZBA to consider them in deciding petitioner’s application (see Matter of Townwide Props, v Zoning Bd. of Appeals of Town of Huntington, 143 AD2d 757, 759 [2d Dept 1988]; Matter of Salierno v Briggs, 141 AD2d 547, 549 [2d Dept 1988]; Matter of Farrell v Board of Zoning & Appeals of Inc. Vil. of Old Westbury, 77 AD2d 875, 876 [2d Dept 1980]). Moreover, while focusing its decision on the neighbors’ various complaints about the property, the ZBA ignored petitioner’s expert report, which was found to be sound by its own expert,[4] that a FAR increase and parking space decrease would have no significant impact on any planning factors considered in land use decisions (CR 41-56, 99-101, 116-118, 120-121). Therefore, the ZBA failed to adequately consider whether the requested variances would have an adverse impact on the neighborhood or whether they would be detrimental to the physical and environmental conditions there (Matter of Russia House at Kings Point, Inc. v Zoning Bd. of Appeals of Vil. of Kings Point, 40 AD3d 767 [2d Dept 2007]; Matter of Purdy St., LLC v Harrison Zoning Bd. of Appeals, 22 AD3d 498 [2d Dept 2005]).
*704 As to whether the benefit sought by the applicant could be achieved by some method other than an area variance, the ZBA’s decision is entirely silent on this point. The desired benefit sought by petitioner was for Montaage Furniture to be able to compete with the other high-end furniture retailers in the area. The record is devoid of any discussion as to whether petitioner could achieve this benefit by a means other than an area variance.
As to the remaining Town Law criteria, the ZBA found that the alleged difficulty was self-created and that the requested variances were substantial. As to the variances being substantial, petitioner points out that the ZBA granted FAR and parking variances to other furniture stores in the area which were several times greater in size than those requested by petitioner. Where the ZBA has granted variances to others similarly situated, it must offer a rational basis for reaching a different conclusion on essentially the same facts (see Matter of Campo Grandchildren Trust v Colson, 39 AD3d 746 [2d Dept 2007]; Matter of Aliperti v Trotta, 35 AD3d 854 [2d Dept 2006]). Here, the ZBA’s decision attempts to distinguish these prior variances by noting that, unlike petitioner, these applicants applied for variances before making the requested changes to their properties. However, as discussed above, under the current version of the Town Law, this is an improper consideration unrelated to the effect of the requested variances. Respondent further attempts to distinguish its prior decisions on the ground that if businesses other than furniture stores were operated on those premises in the future, the intensity of the usage on those premises could be significantly increased. However, this finding ignores evidence in the record of petitioner’s repeated statements that it would accept a condition to limit the property to low intensity uses (CR 46, 185, 188, 264).
In conclusion, it is reiterated that this court in no way condones any attempt to contravene the lawfully enacted requirements of a town’s zoning code or any attempt by applicants to mislead town officials regarding their true intent for their property. However, the appropriate procedure of enforcing compliance with the code is through the issuance of zoning violations and criminal proceedings thereon in the town justice court (see e.g. Matter of Pokoik v Silsdorf, 40 NY2d 769, 772 [1976]; Marro v Libert, 12 Misc 3d 1152[A], 2006 NY Slip Op 50868[U] [Sup Ct, Nassau County 2006], affd 40 AD3d 1100 [2d Dept 2007]). While the ZBA’s frustration with petitioner’s ac *705 tions before the Town is understandable, and its effort to enforce the Code and protect the community from improper property development is commendable, the ZBA is constrained to apply the criteria set forth in the Town Law and not to exceed the grant of its authority.
Thus, because the respondent ZBA failed to properly consider and apply the criteria regarding the granting of area variances set forth at Town Law § 267-b (3) (b), its decision is annulled and the matter remitted to it for reconsideration of the application and the making of specific factual findings in proper form as to the requested variances (see Matter of Gabrielle Realty Corp. v Board of Zoning Appeals of Vil. of Freeport, 24 AD3d 550, 551 [2d Dept 2005]; Matter of Morrone v Bennett, 164 AD2d 887, 889 [2d Dept 1990]; Matter of Greene v Johnson, 121 AD2d 632, 633 [2d Dept 1986]; Matter of Gormally v Shiff, 188 Misc 2d 873, 876 [Sup Ct, Westchester County 2001]).

. Section 285-29.1 (C) (1) of the Code sets the maximum FAR for retail uses in the CA District at .135. Section 285-29.1 (C) (5) of the Code requires that businesses within the CA District provide one parking space for every 200 square feet of retail building space.

. Particularly, respondent points to plans submitted along with petitioner’s application for variances for the premises (CR 26-7), also submitted as exhibit C to the petition, which bear a revision date of “4/7/03” and show the use of the lower level of the building as “retail.” Respondent submits such plan is fraudulent, as it does not bear the stamp of the building inspector and the alleged revision date of April 7, 2003 appears after a revision dated September 25, 2003 showing the use of the lower level for storage, which was the plan actually approved by the building inspector on September 26, 2003. Respondent also denies that petitioner ever submitted these plans to the Building Department, as the plans do not bear any indication that they were received or reviewed.

. The only vestige of this former language of Town Law § 267 (5) appears in current Town Law § 267-b (4) dealing with the imposition of conditions on variances, and which provides that “[s]uch conditions shall be consistent with the spirit and intent of the zoning ordinance or local law, and shall be imposed for the purpose of minimizing any adverse impact such variance may have on the neighborhood or community.”

. Respondent’s expert, Michael Maris, found the Parish report to be sound, but recommended that a condition be imposed on the variances that would limit the use of the space to a furniture store (CR 99-101, 120-121). Several times throughout the ZBA proceedings, petitioner indicated that it was willing to accept such a condition (CR 46, 185, 188, 264).