[886 NYS2d 442]

In the Matter of Caspian Realty, Inc., Respondent, v Zoning Board of Appeals of Town of Greenburgh, Appellant.

Second Department, September 29, 2009

### APPEARANCES OF COUNSEL

*Timothy W. Lewis, Town Attorney*, Greenburgh (*Edward M. Lieberman* of counsel), for appellant.

*Keane & Beane, P.C.*, White Plains (*Judson K. Siebert, Joel H. Sachs* and *Jennifer L. Reinke* of counsel), for respondent.

### OPINION OF THE COURT

DILLON, J.

The issue on this appeal is whether a municipal zoning board may deny requested area variances on the basis of common-law principles that are independent of the statutory factors enumerated under Town Law § 267-b (3). In particular, we are asked to determine whether ongoing and deceitful representations by a variance applicant during earlier interaction with the planning board, and with the zoning board itself, permit the denial of requested area variances. The issue raised, in this context, is novel. We conclude that an applicant's deceitful conduct may form the basis for the denial of requested variances, but only if that conduct and other balanced considerations fit within the factors enumerated by Town Law § 267-b (3).

I. Relevant Facts

In 2000 the petitioner, Caspian Realty, Inc. (hereinafter Caspian),[1] applied to the Planning Board of the Town of Greenburgh (hereinafter the Planning Board) for site plan approval of a proposed furniture store to be located at 155 North Central

---

1. In the proceedings before the subject municipal boards, the petitioner was repeatedly referred to as "Gaspian Realty Co.," based upon the misidentification of Caspian in the deed on file with the Westchester County Clerk. The petitioner was properly identified in all proceedings before the Supreme Court as Caspian Realty, Inc., and we continue the usage here.

Avenue. The application and materials submitted in support of the site plan described the premises as having a main floor and a cellar. The dimensions of the proposed showroom were to be 6,208 square feet, equal to the square footage of the main floor.[2] The square footage represented a floor area ratio (hereinafter FAR) of .134, which was within the .135 FAR permitted by 1980 Town of Greenburgh Zoning Ordinance § 285-29.1 (C) (1). Pursuant to 1980 Town of Greenburgh Zoning Ordinance § 285-5, the FAR is determined by dividing the proposed retail space of 6,208 square feet by the lot area of 46,320 square feet, which equals .134.

During the Planning Board's review of the application, Caspian was specifically asked how it intended to use the cellar of the building. In response, Caspian advised that the cellar would be used for storage and mechanicals only. The use of the cellar for mere storage and mechanicals was significant, as any use of the cellar for retail purposes would cause the premises to exceed the maximum permissible .135 FAR. Moreover, 1980 Town of Greenburgh Zoning Ordinance § 285-29.1 (C) (5) requires one parking space for each 200 square feet of retail space. While the site plan provided for 33 parking spaces, which was two in excess of the minimum, a retail use of the cellar would necessitate a significant parking variance.

Floor plans and revised plans submitted in November 2002 and April 2003, respectively, located the "retail area" on the main floor of the premises only. When, in August 2003, a Town Building Inspector observed improvements being made to the cellar, including the installation of partitions, walls, moldings, finishes, and carpeting, the Town requested, and Caspian provided, further revised plans dated September 25, 2003 that expressly designated the cellar for "storage."

Temporary and permanent certificates of occupancy were issued on October 3, 2003 and November 3, 2003, respectively, based upon the designation of the cellar as a storage area only, and after Caspian erected a barricade across the stairway that leads from the main floor to the cellar.

Caspian's furniture store then opened for business. Months passed, during which time an off-site location was used for storage. On May 5, 2004, the Town charged Caspian in the Green-

---

**2.** The record inconsistently describes the square footage as 6,200 in some instances and 6,208 in others. The eight-foot difference is of no consequence to the issues on appeal.

burgh Justice Court with violations of 1980 Town of Greenburgh Zoning Ordinance § 285-46 (A) (4) (d) and § 285-47 (A) for operating a display area in the cellar of a premises contrary to the certificate of occupancy in March, April, and May of that year, and in failing to abate the violation.

In response to the zoning charges, Caspian filed with the Zoning Board of Appeals of the Town of Greenburgh (hereinafter the ZBA) an application dated July 22, 2005 for two area variances. One variance sought to allow an increase of the FAR from .134 to .268, in contemplation of the cellar's continued use as retail space. The second variance was to reduce the required off-street parking from 62 spaces, as would be required with the retail use of the cellar, to 33 spaces. In its statement in support of the variance application, Caspian represented that it had been "unaware that it could not utilize the basement for retail sales." The variance application was supported by a floor plan, purportedly dated "4/7/03," that denominated the cellar as "retail" space. Caspian argued that it sought use of the cellar as a showroom so that its retail space would be similar to that of its competitors in the area.

A public hearing was conducted on Caspian's application on February 16, April 20, May 18, June 15, August 31, and September 21, 2006. Caspian's representative stated at the hearing that Caspian had always believed that the cellar could be lawfully used for retail purposes. Input was received from members of the public and facts relating to various statutory variance factors were discussed by all concerned. Caspian provided the ZBA with a land use report from Nathaniel J. Parish, P.E., who stated in his report and hearing testimony that the showroom use of the cellar had created no adverse impacts that the parking requirements of the town code were intended to address. Those conclusions by Parish were adopted by Michael Maris, a traffic consultant hired by the ZBA. Homeowners from an adjoining residential neighborhood argued that Caspian had failed to comply with several conditions of the earlier site plan approval such as landscaping, noise, and overnight parking. In particular, they complained that because of the size and location of the building relative to the size of the site, trucks needed to back into the site. They maintained that such truck movement exacerbated traffic conditions on Central Avenue and disturbed the use and enjoyment of their homes.

On November 16, 2006, the ZBA adopted a resolution denying Caspian's application for variances, which was set forth in a

written certification of decision filed with the Town on December 15, 2006. The ZBA determined, inter alia, that Caspian had continuously deceived the Town as to the intended use of the cellar, such that the benefit of granting the variances was outweighed by the detriment that would be caused to the Town by allowing a diminution of respect for its planning, building, and tax laws. The ZBA found that the retail use of the cellar burdened neighboring property owners in terms of noise, truck movement, and traffic tie-ups; that the variance requests were substantial, as they represented a 100% increase in permissible FAR and a 50% decrease in permissible parking; and that Caspian's need for the variances was self-created by its deceptive conduct.

Caspian timely filed a notice of petition and petition dated January 11, 2007 and January 12, 2007, respectively, pursuant to CPLR article 78, seeking to review the ZBA's denial of its requested variances. The petition further requested that the court direct the ZBA to grant its variance application. Caspian reiterated that it had always believed that it could legally use the cellar as a retail showroom; that the build-out of the cellar was open and conspicuous to building inspectors prior to the Town's issuance of the certificates of occupancy; and that a consideration of the factors set forth in Town Law § 267-b (3), which were discussed in detail in the Supreme Court submissions, favored the grant of the variances and rendered the ZBA's denial arbitrary and irrational.

The Town filed an answer to the petition dated May 29, 2007, with extensive affidavits and exhibits.

In the order appealed from, the Supreme Court determined, as a matter of fact, that Caspian had deceived the Town regarding the intended use and purpose of the cellar. Nevertheless, the Supreme Court determined that deception is not an enumerated statutory factor of Town Law § 267-b (3) for granting or denying area variances. The Supreme Court held, inter alia, that the ZBA's focus on Caspian's misrepresentations prevented it from properly assessing the five statutory factors that are expressly set forth in Town Law § 267-b (3). On that basis, the Supreme Court annulled the ZBA's determination and remitted the matter to the ZBA for reconsideration of Caspian's application and the issuance of a new determination setting forth specific findings of fact supporting its determination.

The ZBA appeals.

For reasons set forth below, we reverse. Although the Supreme Court properly found that Caspian had engaged in ongoing,

deceptive conduct regarding its use of the cellar, and the petition is properly and exclusively reviewed pursuant to Town Law § 267-b (3), we disagree with the Supreme Court's ultimate legal conclusion.

## II. Standard of Review

Local zoning boards have broad discretion in considering applications for area variances (*see Matter of Inlet Homes Corp. v Zoning Bd. of Appeals of Town of Hempstead*, 2 NY3d 769 [2004]; *Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d 608 [2004]; *Matter of Ifrah v Utschig*, 98 NY2d 304, 308 [2002]; *Matter of Margaritis v Zoning Bd. of Appeals of Inc. Vil. of Flower Hill*, 32 AD3d 855, 856 [2006]; *Matter of Ram v Town of Islip*, 21 AD3d 493, 494 [2005]). A zoning board's determination shall be upheld if it is rational and not arbitrary and capricious (*see Matter of Sasso v Osgood*, 86 NY2d 374, 384-385 [1995]; *Matter of Bassano v Town of Carmel Zoning Bd. of Appeals*, 56 AD3d 665 [2008]; *Matter of Kaufman v Incorporated Vil. of Kings Point*, 52 AD3d 604, 608 [2008]; *Matter of Clark v Town of N. Salem*, 38 AD3d 773 [2007]; *Matter of Margaritis v Zoning Bd. of Appeals of Inc. Vil. of Flower Hill*, 32 AD3d at 856; *Matter of Pasceri v Gabriele*, 29 AD3d 805 [2006]; *Matter of Halperin v City of New Rochelle*, 24 AD3d 768, 772 [2005]). A determination is rational "if it has some objective factual basis, as opposed to resting entirely on subjective considerations such as general community opposition" (*Matter of Halperin v City of New Rochelle*, 24 AD3d at 772; *see Matter of Ifrah v Utschig*, 98 NY2d at 308; *Matter of Grigoraki v Board of Appeals of Town of Hempstead*, 52 AD3d 832, 833 [2008]; *Matter of Marro v Libert*, 40 AD3d 1100, 1101 [2007]).

## III. Whether Caspian's Intended Use of the Cellar was Deceptive

A threshold consideration for this appeal is whether the ZBA and the Supreme Court had a basis for concluding that Caspian intended to deceive the Town with respect to its proposed and actual use of the cellar. We find that Caspian did, in fact, undertake a concerted effort to mislead the Town as to the purpose and use of the cellar, both before and after the issuance of the Town's site plan approval and its issuance of certificates of occupancy. Our conclusion is based upon the following five factors:

First, as noted by the Supreme Court, Caspian repeatedly represented its site plan application as a 6,208 square foot retail structure with a .134 FAR. Caspian conveyed its representations

by the application itself, its plans and revised plans, statements reflected by transcript and minutes of Planning Board meetings on February 21, 2000 and January 30, 2002, various letters from Caspian's prior counsel, and Caspian's revised environmental assessment form. We conclude, as did the Supreme Court, that the 6,208 square footage and the .134 FAR could mathematically relate solely to the retail use of the building's main floor and not to its cellar.

Second, evidence that Caspian affirmatively misled the Town can be inferred from Caspian's awareness, reflected in the record, that retail space exceeding 6,208 square feet required variances for both FAR and parking. No variances were ever sought prior to the issuance of certificates of occupancy.

Third, further evidence of deception can be gleaned from the fact that improvements to the cellar, including partitions, walls, molding, finishes, and carpet, were installed prior to the issuance of the temporary certificate of occupancy, at approximately the same time that Caspian's second revised plan was submitted expressly identifying the cellar as for "storage only."

Fourth, as noted by the ZBA in its decision, Caspian always maintained nearby distribution facilities rendering the use of the cellar for the storage of furniture unnecessary.

Fifth, after the store opened to the public, evidence of continuing deception exists from Caspian's submission on August 8, 2006 of a floor plan on which a revision changing the cellar's use to "retail" has apparently been back-dated to "4/7/03." As explained by the Town's Building Inspector, the floor plan submitted on August 8, 2006 does not bear his approval stamp, as do earlier uncontested plans submitted by Caspian. The alleged 4/7/03 revision is listed out of chronological order in the lower left-hand corner of the document after a revision containing the notation "9/25/03," an indication that the purported 4/7/03 revision was actually added sometime after September 25, 2003. Also, we note that the revised floor plans dated September 25, 2003, submitted to the Town by Caspian, do not show the "4/7/03" revision, and clearly delineate the cellar as merely "storage."

IV. The Legal Effect of the Applicant's Deception upon an Area Variance Application

The parties dispute the effect that is to be given to any evidence that Caspian had engaged in a pattern of deception toward the Town regarding the use of the cellar. The ZBA maintains, by relying upon *Matter of Ostroff v Sacks* (64 AD2d

708 [1978]), *Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld* (91 AD2d 190 [1983]), and *Matter of Pioneer-Evans Co. v Garvin* (191 AD2d 1026 [1993]), that deliberate misrepresentations and deceptions by a municipal applicant, standing alone, permit the denial of requested variances. In contrast, Caspian argues that Town Law § 267-b (3), effective in 1992, preempts the field of area variance review by limiting review to the five factors expressly set forth by the Legislature in the statute. Under this argument, any consideration of Caspian's conduct or intent would contravene the purpose of Town Law § 267-b. Caspian argues that since variances run with the land, and not with the property owner, any focus upon the owner's conduct is inappropriate.

This Court decided *Matter of Ostroff v Sacks* in 1978, prior to the enactment by the State Legislature of Town Law § 267-b (3) and its village counterpart, Village Law § 7-712-b (3). *Ostroff* involved a homeowner's representation to a local zoning board that a kitchen to be installed on the second floor of his single-family residence, in a single-family residential zone, was to be the sole kitchen on the premises. Thereafter, it was learned that the homeowner installed kitchens on both the first and second floors of the premises, which were equipped with separate entrances. This Court upheld the denial of a subsequent application for an area variance on the ground that because the homeowner had engaged in subterfuge during his initial application, he was estopped from having his subsequent application for an area variance approved.

*Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld* was decided by the Second Department in 1983, also prior to the 1992 effective date of Town Law § 267-b (3). In *Rosenfeld,* the Unification Church of Reverend Sun Myung Moon (hereinafter the Church) sought a use variance for property. While the application for a special use permit was pending before the Town's zoning board, the Church used the property for workshops, retreats, and seminars in violation of applicable zoning regulations, contrary to representations affirmatively made at the same time to the zoning board (*see Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld*, 91 AD2d at 200). Additionally, while the Church had represented to the zoning board that no more than three persons unrelated by blood or marriage would reside at the property while the application was pending, an inspection of the site revealed no fewer than 12 beds made up for sleeping (*id.*).

This Court upheld the denial of the special use permit application, on the ground that misrepresentations made by the Church during the pendency of the zoning application properly permitted the zoning board to infer that the Church would not comply with conditions imposed on its proposed use and that "the Church's deceit, in and of itself, justified denial of the special use permit" (*Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld*, 91 AD2d at 201).

The ZBA, while conceding that *Ostroff* and *Rosenfeld* precede the enactment of Town Law § 267-b (3), maintains that the cases are not superseded by the Town Law inasmuch as section 267-b (3) continues preexisting case law rather than statutorily abrogating it (*see People ex rel. Desiderio v Connolly*, 212 App Div 102 [1925]; *Chase Manhattan Bank [Natl. Assn.] v McLeish*, 55 Misc 2d 1009 [1968]). Indeed, in *Matter of Sasso v Osgood* (86 NY2d 374 [1995]), the Court of Appeals, in examining the legislative history and intent of Town Law § 267-b, described the main thrust of the legislation as " 'to clarify and establish, in statute, the powers of the Zoning Board as already defined by jurisprudence' " (*Matter of Sasso v Osgood*, 86 NY2d at 384, quoting Sponsor's Mem, Bill Jacket, L 1991, ch 692, at 20; *see* Mem of NY St Conf of Mayors and Other Mun Officials, Bill Jacket, at 33 ["(t)his legislation does not substantially change the existing law, but, clarifies the present statute"]; *see also* Mem of Assembly Sponsor Magee, Bill Jacket, at 23; Mem of Association of Towns, Bill Jacket, at 35). While an argument can be made that the language of *Sasso* can be construed to recognize the continuing viability of "jurisprudence" that predates the statute, we are reluctant to give that language from the Court of Appeals such an expansive meaning. Rather, we are more inclined to view the language of the Court of Appeals, that the statute clarifies and establishes zoning powers "already defined by jurisprudence," as merely referring to the preexisting case law that pertains to the various factors which the Legislature saw fit to expressly include within the scope of Town Law § 267-b (3).

Caspian correctly argues that the standards set forth in Town Law § 267-b (3) are exclusive, thereby precluding zoning boards of appeal from considering any factors not recited in the statute (*see Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395, 402 [2003] [interpreting parallel statute for villages under Village Law § 7-712-b]; accord *Matter of Hampshire Mgt. Co. v Nadel*, 241 AD2d 496, 497 [1997]). In *Cohen*, the

Court of Appeals specifically determined that the amendments of both the Town Law and Village Law, setting forth a standard of review for area variance applications, reflects "an intent by the Legislature to occupy the field and bring a measure of statewide consistency to the variance application and review process" (*Matter of Cohen v Board of Appeals of the Vil. of Saddle Rock*, 100 NY2d at 401-402). The Court of Appeals further explained that the Legislature fully intended to replace an earlier, confusing "practical difficulty" standard with a more consistent statutory scheme that weighed the benefits to the applicant against the detriment to the community, in addition to other express statutory factors (*id.* at 402). Indeed, *Cohen* expressly described the statutory amendments as the State's preemption of local authority, not to usurp local zoning authority or home rule powers, but rather, to establish a uniform statewide standard for area variance review (*id.*). Accordingly, to the extent that *Ostroff* and *Rosenfeld* can both be construed as holding that an applicant's misrepresentations to a zoning board provide a sole basis for denying an area variance, such cases can no longer be considered viable upon the preemptive enactments of Town Law § 267-b (3) and Village Law § 7-712-b (3).

Our interpretation that Town Law § 267-b is preemptive is consistent with the maxim of statutory construction, expressio unius est exclusio alterius, that where a law expressly describes a particular act, thing or person, an irrefutable inference must be drawn that what is omitted or not included was intended by the Legislature to be omitted or excluded (*see generally Matter of Town of Eastchester v New York State Bd. of Real Prop. Servs.*, 23 AD3d 484, 485 [2005]; McKinney's Cons Laws of NY, Book 1, Statutes § 240). The Legislature, by enumerating five factors of Town Law § 267-b (3), without including an applicant's deceptive conduct as an expressed additional factor, is presumed to have done so intentionally.

The ZBA nevertheless points to *Matter of Pioneer-Evans Co. v Garvin* (191 AD2d 1026 [1993]) as authority that deceptive conduct to a zoning board, standing alone, provides sufficient reason to deny the grant of a special use permit, notwithstanding the prior enactment of Town Law § 267-b (3). Town Law § 267-b (3) became effective July 1, 1992 (*see* L 1991, ch 692), while *Pioneer-Evans* was decided on March 12, 1993. *Pioneer-Evans,* which was decided by the Fourth Department, has never been cited for that precise legal proposition since 1993.

Considering that *Pioneer-Evans* involved a zoning board's determination dated February 19, 1992, the Fourth Department's decision may have been based upon law that preceded the effective date of Town Law § 267-b (3). Moreover, *Pioneer-Evans* involved the denial of a special use permit (*see* Town Law § 267-b [2]) which does not implicate Town Law § 267-b (3), the statutory section relevant here (*compare* Town Law § 267-b [2] *with* § 267-b [3]). This Court therefore declines to follow *Pioneer-Evans* under the circumstances present in the instant matter.

In light of the foregoing analysis, the Supreme Court properly limited its focus to the enumerated considerations of Town Law § 267-b (3) in reaching the determination appealed from. We do so as well.

V. Application of Town Law § 267-b (3)

Pursuant to Town Law § 267-b (3), when making determinations on applications for area variances, zoning boards of appeals "must weigh the benefit of the grant to the applicant against the detriment to the health, safety and welfare of the neighborhood or community if the variance is granted" (*Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d at 612). The statute further provides that in making such determinations the zoning board shall also consider:

"(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance;

"(2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance;

"(3) whether the requested area variance is substantial;

"(4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and

"(5) whether the alleged difficulty was self-created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance." (Town Law § 267-b [3] [b]; *see also Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d at

612-613; *Matter of Fowlkes v Board of Zoning Appeals of Town of N. Hempstead*, 52 AD3d 711, 712 [2008]; *Matter of Schumacher v Town of E. Hampton, N.Y. Zoning Bd. of Appeals*, 46 AD3d 691, 692-693; *Matter of Hannett v Scheyer*, 37 AD3d 603, 604 [2007].)

The statute envisions that courts will engage in a balancing test of the enumerated factors (*see Matter of Bull Run Props., LLC v Town of Cornwall Zoning Bd. of Appeals*, 50 AD3d 683, 684 [2008]; *Matter of Voetsch v Craven*, 48 AD3d 585, 586-587 [2008]; *Matter of Schumacher v Town of E. Hampton, N.Y. Zoning Bd. of Appeals*, 46 AD3d 691, 692 [2007]). A ZBA is not required to justify its determinations with supporting evidence as to each of the five factors, so long as its determinations balance the relevant considerations in a way that is rational (*see Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals*, 43 AD3d 926, 929 [2007]).

We find that the ZBA considered and balanced the factors of Town Law § 267-b in denying Caspian's application for an area variance.

As to the primary consideration of the statute, regarding the benefit of the applicant weighed against any adverse impact upon the community, the ZBA noted that site plan approval was received from the Planning Board, permits were issued by the building department, and tax assessments were levied by the tax assessor, all based upon plans showing Caspian's cellar to be used for storage only. The ZBA concluded, in its written certification of decision, that Caspian "never intended use [of] the basement for storage," and that Caspian "concealed from the Town the actual intended use of the basement of this property from the very first day of operation." The ZBA concluded, in broad fashion, that any benefit to Caspian in permitting it to use the cellar as a retail showroom was outweighed by the detriment to the Town, its citizens, and its commercial operations, that would result from permitting Caspian to successfully mislead planning, building, and tax authorities. We take no issue with the ZBA on this point.

To the extent that Town Law § 267-b (3) requires consideration of whether the requested area variance is substantial, the ZBA properly noted that the requested increase in FAR was 100%, and the requested decrease in parking was 50%. These requested variances are substantial and support the denial of the variance application (*see Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d at 614 [33.3% deficiency in

lot area and 27.3% deficiency in frontage width deemed substantial]; *Matter of Allstate Props., LLC v Board of Zoning Appeals of Vil. of Hempstead*, 49 AD3d 636, 637 [2008] [20% less area and frontage deemed substantial]; *Matter of Heitzman v Town of Lake George Zoning Bd. of Appeals*, 309 AD2d 1126, 1128 [2003] [exceeding maximum allowable lot coverage by 15% deemed substantial]; *Matter of Robbins v Seife*, 215 AD2d 665 [1995] [42.9% and 19% variances in building and loft coverage substantial]; *Matter of Sakrel, Ltd. v Roth*, 176 AD2d 732, 735 [1991] [yard setback variances of 50%, 67%, 67% and 50% on all sides deemed substantial]; *see generally Matter of Chandler Prop., Inc. v Trotta*, 9 AD3d 408 [2004]).

Town Law § 267-b (3) also requires consideration of whether the applicant's need for variances is self-created. While the self-imposed nature of a hardship is fatal to a use variance application (*see e.g. Matter of Clark v Board of Zoning Appeals of Town of Hempstead*, 301 NY 86, 89 [1950], *cert denied* 340 US 933 [1951]; *Matter of Khanuja v Denison*, 203 AD2d 679, 681 [1994]), the self-imposed nature of a hardship is significant, but not determinative, to an area variance (*see Matter of De Sena v Board of Zoning Appeals of Inc. Vil. of Hempstead*, 45 NY2d 105, 108 [1978]; *Matter of Byron Assoc. v Zoning Bd. of Appeals of Town of Mamaroneck*, 142 AD2d 643 [1988]). An area variance may be denied based in part upon the self-created nature of the difficulty as viewed among other relevant factors (*see Matter of Springer v Zoning Bd. of Appeals of Town of Somers*, 109 AD2d 888 [1985]). Here, the ZBA determined that Caspian's difficulties were self-created by virtue of using the cellar of the building as a showroom without seeking or obtaining the required municipal approvals (*see Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals*, 43 AD3d at 929; *Matter of Becvar v Scheyer*, 250 AD2d 842, 843 [1998]). We agree with the ZBA that under the peculiar circumstances of this matter, Caspian's self-created difficulties represent a particularly compelling statutory factor, given its repeated and documentable misrepresentations to the Planning Board, building department, tax assessor, and zoning board, both prior to and after the issuance of the Town's site plan approval and certificates of occupancy, as to its true intended use of the cellar.

Town Law § 267-b (3) requires that the variance applicant consider feasible alternatives that might alleviate the need for the variance (*see Matter of Chandler Prop. Inc. v Trotta*, 9 AD3d at 409; *Matter of Johnson v Town of Queensbury Zoning Bd. of*

*Appeals*, 8 AD3d 741, 743 [2004]). The benefit of the variance sought by Caspian is a furniture showroom that can compete, in terms of square footage, with those of competitors. The Supreme Court held that the ZBA failed to consider whether the same benefit could be obtained by alternate means. The ZBA did, however, address this factor of Town Law § 267-b (3) to the extent of finding that the cellar could be put to an alternative use, as storage, which is consistent with the plans that were originally approved by the Town.

The ZBA's recognition that the alternative uses of the cellar were limited, essentially, to being a showroom or a storage area, "merely stated the obvious" (*Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals*, 43 AD3d at 930) as to this factor. Nevertheless, the factor was considered. A showroom use of the cellar cannot be achieved without significant area variances as to FAR and parking, as noted. Moreover, Caspian provided no evidence of the square footage of competitor showrooms or the effect that additional showroom space might have on its profitability. Even if we were to presume that the additional showroom space might render the furniture store more profitable or competitive, this record, unlike that of *Matter of Hampshire Mgt. Co. v Nadel* (241 AD2d 496, 497 [1997]), upon which Caspian relies, fails to evidence the effect of the cellar showroom on Caspian's relative competitiveness.

Not all of the statutory factors favor the denial of Caspian's area variance application. To the extent that Town Law § 267-b (3) requires consideration of whether there would be an undeniable change in the character of the neighborhood or detriment to nearby property created by the granting of an area variance, and whether the proposed variance would adversely affect the physical or environmental conditions of the neighborhood (*see e.g. Matter of Matherson v Scheyer*, 20 AD3d 425 [2005]; *Matter of Johnson v Town of Queensbury Zoning Bd. of Appeals*, 8 AD3d at 743), the ZBA relied upon complaints from neighbors regarding noise and trucks backing into Caspian's parking lot, landscaping, garbage pickups, and the overnight storage of commercial vehicles. However, generalized or unsubstantiated complaints from neighbors, unsupported by empirical or expert evidence, are generally insufficient for a zoning board to base its decision (*see Matter of Ifrah v Utschig*, 98 NY2d at 308; *Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals*, 66 NY2d 893, 895 [1985]; *Matter of Grigoraki v Board of Appeals of Town of Hempstead*, 52 AD3d at 833; *Matter of*

*Gonzalez v Zoning Bd. of Appeals of Town of Putnam Val.*, 3 AD3d 496, 497-498 [2004]; *Matter of Necker Pottick, Fox Run Woods Bldrs. Corp. v Duncan*, 251 AD2d 333, 335 [1998]). In contrast, a zoning board's reliance upon specific, detailed testimony of neighbors based on personal knowledge does not render a variance determination the product of generalized and conclusory community opposition (*see Matter of Millennium Custom Homes, Inc. v Young*, 58 AD3d 740 [2009]; *Matter of Fagan v Colson*, 49 AD3d 877, 878 [2008]).

Here, based upon complaints from members of the community, the ZBA determined that the particular size and placement of the buildings on the lot required delivery trucks to maneuver into Caspian's parking lot backwards, tying up traffic on Central Avenue, and that this factor was among those that warranted a denial of the requested area variance. The ZBA's determination in this regard is wholly unsupported by the record, for two reasons. First, it is contrary to the portions of the land use report of Caspian's expert, Nathaniel J. Parish, P.E., which found that the showroom use of the cellar did not have an adverse impact upon local traffic and parking. Significantly, Parish's analysis was adopted as accurate with respect to traffic and parking by the ZBA's own traffic consultant, Michael Maris, based upon its Institute of Transportation Engineers (hereinafter ITE) estimates. Second, the complaints voiced by neighbors, that trucks of a certain size disrupt traffic by backing into the parking lot, while perhaps evidencing flawed design, would remain unchanged whether the cellar was used as a showroom or for storage. As correctly noted by the Supreme Court, other neighborhood complaints regarding the timing of garbage pickups, overnight parking, and landscaping, fail to relate to Caspian's requested variance.

Contrary to the determination of the Supreme Court, we also find that the ZBA adequately distinguished other cases in the Town of Greenburgh where area variances had been granted (*see generally Knight v Amelkin*, 68 NY2d 975, 977-978 [1986]; *Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516, 517 [1985]; *Matter of Muth v Scheyer*, 51 AD3d 799, 800 [2008]; *Matter of Berk v McMahon*, 29 AD3d 902, 903 [2006]).

V. Balancing the Statutory Factors

The application to the ZBA raised some statutory factors of Town Law § 267-b (3) that favor the grant of Caspian's requested area variances, and other factors that negatively affect the application. On the one hand, and contrary to the ZBA's

determination, the record does not reveal that the grant of Caspian's variance application would cause an undesirable change in the character of the neighborhood, or that it would adversely affect the physical or environmental conditions of the neighborhood. On the other hand, the requested variances for both FAR and parking are significant, and the unfortunate circumstance in which Caspian finds itself of having a nonconforming showroom in its cellar is clearly self-created by its history of deceitful conduct toward the Town. The factor of feasible alternatives is ambiguous at best.

In weighing these competing factors, which were each addressed in some form or fashion by the ZBA, we are mindful that our judicial responsibility is to review zoning decisions to assure that the statutory factors have been considered, but not, absent proof of arbitrary or irrational action, to make the decisions for the zoning boards (*see Matter of Cowan v Kern*, 41 NY2d 591, 599 [1977]; *Matter of Pecoraro v Board of Appeals of Town of Hempstead*, 2 NY3d at 613; *Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals*, 43 AD3d at 928). Local zoning boards have discretion in considering variance applications, particularly given their "familiarity with local conditions necessary to make the often sensitive planning decisions which affect the development of their community" (*Cowan v Kern*, 41 NY2d at 599).

Under the circumstances of this case, we find that the determination of the ZBA denying Caspian's requested area variances was neither arbitrary or irrational. In doing so, we are guided by two analogous cases from this Court, *Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals* (43 AD3d 926 [2007]) and *Matter of Becvar v Scheyer* (250 AD2d 842 [1998]). Both cases involved homeowners who constructed second stories to their homes in violation of applicable local regulations and without obtaining prior area variances. In both cases, while some factors may have favored the grant of area variances that were later sought, this Court upheld the ZBA's denial of the variances on the grounds that, principally, the applicants' requests were significant and their difficulties self-created (*see Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals*, 43 AD3d at 930-931; *Matter of Becvar v Scheyer*, 250 AD2d at 843; *see also Matter of Robbins v Seife*, 215 AD2d 665 [1995]). So too, here. Caspian designed and used its basement as a showroom knowing that doing so was in violation of local zoning regulations.

VI. Conclusion

In sum, we conclude that while an applicant's deceit toward municipal boards with respect to prior or current applications may not, standing alone, warrant the denial of an area variance under Town Law § 267-b (3), that factor can be considered significant and compelling to the extent it inextricably relates to certain of the enumerated statutory factors, such as whether the benefit of a requested variance is outweighed by the adverse impact which may inure to the Town and its ability to enforce the law in future cases if it were to grant an area variance to an applicant who had misled municipal authorities throughout the application process. Here, the requested area variance was substantial, and the alleged difficulty is clearly self-created by virtue, in this case, of Caspian's apparent deceit (*see Matter of Merlotto v Town of Patterson Zoning Bd. of Appeals*, 43 AD3d 926 [2007]; *Matter of Becvar v Scheyer*, 250 AD2d 842 [1998]).

The parties' remaining contentions either are without merit or need not be reached in light of our determination.

Accordingly, on the Court's own motion, the notice of appeal is treated as a application for leave to appeal, leave to appeal is granted (*see* CPLR 5701 [c]), the order is reversed, on the law, with costs, the petition is denied, and the proceeding is dismissed.

SPOLZINO, J.P., FLORIO and ANGIOLILLO, JJ., concur.

Ordered that on the Court's own motion, the notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is reversed, on the law, with costs, the petition is denied, and the proceeding is dismissed.